In re SWEETWATER, a Utah corporation, et al., Debtors and Debtors in Possession.

W. LaMonte ROBISON, as trustee for administrative claimants as assignees of a chose in action from Sweetwater, a Utah corporation, et al., Debtors and Debtors in Possession, Plaintiff-appellee,

v.

FIRST FINANCIAL CAPITAL MANAGEMENT CORPORATION, a Minnesota corporation, Defendant-appellant.

W. LaMonte ROBISON, as trustee for administrative claimants as assignees of a chose in action from Sweetwater, a Utah corporation, et al., Debtors and Debtors in Possession, Plaintiff-appellee,

v.

CITICORP ACCEPTANCE COMPANY, INC., a Delaware corporation, Defendant-appellant.

Bankruptcy Nos. 83A–2582, 84PA–1437 and 84PA–1438 and Nos. C 84–2169J and C 84–2170J.

United States District Court, D. Utah, C.D.

Nov. 25, 1985.

Ralph R. Mabey, Salt Lake City, Utah, for W. LaMonte Robison.

L. Mark Ferre, William F. Kuntz, Salt Lake City, for Citicorp Acceptance Co.

Rolf H. Berger, Philip V. Martino, Salt Lake City, Utah, for First Financial Capital Management Corp.

## MEMORANDUM OPINION AND ORDER

JENKINS, Chief Judge.

The defendants in these related cases appealed the bankruptcy court's interlocutory order of December 17, 1984, denying their motions to dismiss. This court granted leave to appeal pursuant to Bankruptcy Rule 8003. The matter was argued before the court on April 1, 1985. L. Mark Ferre and William F. Kuntz appeared for the appellant Citicorp Acceptance Company. Rolf H. Berger and Philip V. Martino appeared for the appellant First Financial Capital Management Corporation. Ralph R. Mabey appeared for the appellee, W. LaMonte Robison. The appellants challenged the bankruptcy court's conclusion that it had jurisdiction to hear the adversary proceedings and that the plaintiff was a proper party to bring the actions. The court took the matter under advisement at that time. After considering the record, the arguments of counsel, the parties' briefs and the pertinent authorities, the court now enters this memorandum opinion.

### I. Background

On September 23, 1983, Sweetwater and its affiliates filed a petition for reorganization under chapter 11 of the Bankruptcy Code, 11 U.S.C.A. §§ 1101–1174 (1972 & Supp.1985).[1] While the bankruptcy proceeding was pending, the debtors continued to operate their business as debtors in possession, under sections 1107 and 1108 of the Code, incurring certain debts that were considered "administrative expenses" under section 503 of the Code. The plaintiff-appellee represents those who have a claim for administrative expenses.

Under section 1129(a)(9)(A) of the Code, the debtors had to pay these administrative claimants the allowed amount of their claims in cash on the effective date of their reorganization plan unless the administrative claimants "agreed to a different treatment" of their claims. Because the debtors could not pay the administrative claims in full on the effective date of reorganization, they entered into an agreement with the administrative claimants under which certain claims would be paid in full and the remaining claims would be paid prorata from a pool of cash and other assets, in-

---

1. Unless otherwise indicated, all statutory references are to the Bankruptcy Code (hereinafter referred to as the Code), title 11 of the United States Code.

cluding "potential proceeds from litigation or settlement with First Financial and Citicorp," the defendants in these actions. The agreement vested title to these assets in the plaintiff, as trustee for the administrative claimants. It provided, however, that the causes of action against First Financial and Citicorp "may be retained by the Debtors insofar as necessary to preserve the causes of action." Any balance in the pool after the trustee had deducted fees and costs and paid the administrative claimants in full, with interest, was to belong to the reorganized debtor.

This agreement between the debtors and the administrative claimants presumably became part of the debtors' reorganization plan, which the bankruptcy court confirmed on June 8, 1984.[2]

On September 12, 1984, the plaintiff, as assignee of the debtors' claims against First Financial and Citicorp,[3] brought actions against the defendants in the bankruptcy court for this district, alleging that certain transfers of property to them are avoidable under 11 U.S.C.A. §§ 544(a)(1) (the so-called strong-arm clause), 547(b) (preferential transfer provision), 549(a) (post-petition transfer provision), and 553(b)(1) (setoff provision).

The defendants moved to dismiss the complaints on three grounds. First, they claimed that the bankruptcy court lacked jurisdiction because the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (codified in scattered sections of 11 U.S.C. and 28 U.S.C.), which purports to extend the terms of bankrutpcy judges beyond June 28, 1984, violated the appointments clause of the United States Constitution, article II, section 2, clause 2. Second, the defendants claimed that the bankruptcy court lacked

jurisdiction because the suits do not arise under title 11, nor do they arise in or relate to a case under title 11, as required by 28 U.S.C.A. § 1334(b). Third, the defendants claimed that the plaintiff could not maintain these actions because the avoiding powers of a trustee or debtor in possession under the Code are not assignable.

The plaintiff disputed each of the defendants' arguments and claimed that the defendants were precluded from challenging the validity of the assignment because they had failed to object to the reorganization plan when it was before the bankruptcy court.

The bankruptcy court denied the defendants' motions to dismiss, holding that the claims were properly assigned and that they arose under title 11, within the meaning of 28 U.S.C.A. § 1334(b). The bankruptcy court did not reach the constitutional issue because of an unpublished ruling by Judge David K. Winder of this court that the 1984 Act was constitutional. *In re Wasatch Factoring, Inc.*, Misc. No. B–0015W (D.Utah Nov. 26, 1984).

## II. Issues on Appeal
### A. Constitutionality of the 1984 Act

■ The defendants' first contention on appeal is that the 1984 Act violates the appointments clause, U.S. Const. art. II, § 2, cl. 2, which vests in the President the power to appoint officers of the United States whose appointments are not otherwise provided for. To understand the defendants' argument, one must first understand the history of the bankruptcy courts, especially since the enactment of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2549 (the "1978 Act"). That history is set out in detail in *In re*

---

**2.** This court affirmed the bankruptcy court's confirmation of the plan in *Citicorp Acceptance Company v. RUTI–Sweetwater (In re Sweetwater)*, No. C–84–518J, —— B.R. —— (D.Utah Feb. 28, 1985). The reorganization plan is not part of the record on this appeal.

**3.** The complaints state that the plaintiff brings the actions as trustee for the administrative claimants, who are described as the "owners of

a chose in action" against the defendants. However, the agreement between the administrative claimants and the debtors, which the plaintiff asserts was incorporated into the reorganization plan, states that title to the causes of action "are hereby vested in" the plaintiff. The plaintiff will therefore be treated as the purported owner of the debtors' claims.

*Benny,* 44 B.R. 581, 584–86 (N.D.Cal.1984). Suffice it to say that the 1978 Act restructured the bankruptcy court system and established a transition period during which the existing bankruptcy courts were to continue in operation. The term of office of each bankruptcy judge was extended to March 31, 1984, or "when his successor takes office." 1978 Act, tit. 4, § 404(b), 92 Stat. at 2683. For bankruptcy judges appointed during this transition period, such as the Honorable John H. Allen, who heard this case, the applicable hold-over provision was section 34(a) of the old Bankruptcy Act (codified at former 11 U.S.C. § 62(a) ). *Id.* § 404(d), 92 Stat. at 2684. Section 34(a) provided: "Upon the expiration of his term, a referee in bankruptcy [i.e., a bankruptcy judge] shall continue to perform the duties of his office until his successor is appointed and qualifies...."

The expiration date of the transition period was eventually extended to June 27, 1984. *See* Pub.L. No. 98–249, 98 Stat. 116 (1984); Pub.L. No. 98–271, 98 Stat. 163 (1984); Pub.L. No. 98–299, 98 Stat. 214 (1984); Pub.L. No. 98–325, 98 Stat. 268 (1984).

Some two weeks after this expiration date, on July 10, 1984, the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 ("the 1984 Act") was signed into law. Section 121(e) of that act retroactively extended the term of all bankruptcy judges serving on June 27, 1984, to July 10, 1984, the date the new act became law. Section 106(a) of the 1984 Act extended the terms of bankruptcy judges serving on July 10, 1984, to the later of October 1, 1986, or four years from the date of their last appointment.

The defendants claim that the terms of office of all bankruptcy judges ended on June 27, 1984, when the transition period expired, and that Congress, in the 1984 Act, created new bankruptcy judgeships and "appointed" interim judges to fill those positions, in violation of the appointments clause.

On this issue the parties have primarily relied on the extensive briefs filed in *In re Benny,* 44 B.R. 581 (N.D.Cal.1984).[4] This court agrees with Judge Schnacke's conclusion in that case that there was no "gap" between June 27, 1984, and July 10, 1984, during which the bankruptcy courts ceased to exist. The hold-over provisions of the 1978 Act, sections 404(b) and (d) (as amended), authorized the bankruptcy judges to continue in office until June 27, 1984, *or* until their successors were appointed or took office. Because no bankruptcy judges were appointed or took office between June 27 and July 10, 1984, the bankruptcy judges serving on June 27, 1984, continued in office at least until July 10, 1984. Thus, the 1984 Act is not constitutionally infirm. It did not "appoint" interim bankruptcy judges, in violation of the appointments clause, because there were no vacant offices to appoint them to. Neither was it an impermissible retroactive extension of the bankruptcy judges' offices, since their offices had not expired at the time the act was passed.

█ Even if this court were persuaded that there was a gap between the expiration of the transition period and the effective date of the 1984 Act, it would reaffirm its judgment in *In re Wasatch Factoring, Inc.,* Misc. No. B–0015W (D. Utah Nov. 26, 1984), upholding the constitutionality of the 1984 Act, for the reasons stated in Judge Schnacke's scholarly opinion in *In re Benny.*[5] It was within Congress's authority to

4. In that case the constitutionality of the 1984 Act was challenged by the debtors and the Justice Department. Supporting constitutionality were the trustee, a creditors committee, the U.S. Senate, the Speaker and Bipartisan Leadership Group of the U.S. House of Representatives, and, as *amici curiae,* certain sitting bankruptcy judges.

5. Significantly, our research shows that every other court that has considered the constitutional question these defendants raise has agreed with Judge Schnacke's conclusion, and most have simply adopted his reasoning. *See, e.g., Lombard-Wall, Inc. v. New York City Hous. Dev. Corp. (In re Lombard-Wall, Inc.),* 48 B.R. 986, 993 (S.D.N.Y.1985); *Moody v. Empire Life Ins. Co. (In re Moody),* 46 B.R. 231 (M.D.N.C.1985); *Danning v. Lummis (In re Tom Carter Enterpris-*

extend the terms of officers previously appointed in conformity with the appointments clause, even if it did so retroactively. That retroactive extension by Congress is simply not an "appointment" within the meaning of the appointments clause.

### B. The Bankruptcy Court's Subject Matter Jurisdiction

The defendants next argue that, because the plaintiff's claims do not affect the debtors' bankruptcy estates or their administration, the bankruptcy court lacks subject matter jurisdiction to hear those claims.

Bankruptcy courts, like all federal courts, are courts of limited jurisdiction. They can hear only those categories of cases that Congress authorizes, *see Aldinger v. Howard*, 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976), and Congress is limited in the types of cases it can entrust to the jurisdiction of non-article III courts such as the bankruptcy courts, *see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 76, 102 S.Ct. 2858, 2874, 73 L.Ed.2d 598 (1982) ("Art. III bars Congress from establishing legislative courts to exercise jurisdiction over all matters related to those arising under the bankruptcy laws") (plurality opinion). When the plaintiff brought these actions in the bankruptcy court, that court's jurisdiction was governed by 28 U.S.C.A. sections 1334 and 157.[6] Those sections distinguish between (1) "cases under title 11" and (2) "civil proceedings" (a) "arising under title 11," (b) "arising in . . . cases under title 11," or (c) "related to cases under title 11" and give district courts jurisdiction over all of the various

types of proceedings. *See* 28 U.S.C.A. § 1334(a) & (b). But for present purposes, when one unravels the gordian knot those sections present, the distinctions disappear, since district courts can refer "any or all" of the various types of proceedings to the bankruptcy judges for the district. *Id.* § 157(a). This court has accepted Congress's invitation and referred "any and all cases under title 11 and any and all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges for this district. Order re Referral of Bankruptcy Matters to Bankruptcy Judges, July 10, 1984. Thus, the bankruptcy court has jurisdiction over these cases if they fit within any of the stated categories.[7]

■ These adversary proceedings are clearly not "cases" under title 11, since neither party has filed a petition for relief under title 11. *See* 1 Collier on Bankruptcy ¶ 3.01[b][i] at 3–20 (15th ed. 1985) ("The 'case' referred to in section 1334(a) is the case upon which all of the proceedings which follow the filing of a petition are predicated"). Defendant Citicorp argues that they are not actions "arising under title 11" either, because they are not bankruptcy cases. But such an interpretation of "arising under" goes too far, since it would make meaningless the distinction the statute carefully draws between a "case" under title 11 and a civil proceeding "arising under" title 11. To read the two categories as synonymous would be to read the latter out of the statute, a result contrary to established rules of statutory construction and one clearly not intended by Con-

---

*es, Inc.),* 44 B.R. 605 (C.D.Cal.1984); *Baldwin-United Corp. v. Thompson (In re Baldwin-United Corp.),* 48 B.R. 49 (Bankr.S.D.Ohio 1985); *Lingley v. Fastener House (In re Acme-Dunham, Inc.),* 45 B.R. 227 (Bankr.D.Me.1984).

**6.** The original jurisdictional provisions of the 1978 Act, 28 U.S.C. §§ 1471–1482, were effectively repealed by the 1984 Act, in the wake of *Marathon.* These actions were filed some two months after the 1984 Act became law.

**7.** However, the bankruptcy court's disposition of the cases may depend on which category they fall under, since bankruptcy judges may only

enter final orders and judgments in "cases" under title 11 and "core proceedings" arising under title 11 or arising in a case under title 11. 28 U.S.C.A. § 157(b)(1); *see also id.* § 157(b)(2) for examples of "core proceedings." Bankruptcy judges may not enter final orders and judgments in non-core proceedings or proceedings that are only "related to" a case under title 11. *Id.* § 157(c)(1). In non-core or "related" proceedings, bankruptcy judges may submit proposed findings of fact and conclusions of law. *Id.* § 157(c)(1).

gress. The category of proceedings "arising under" title 11 must therefore be broader than "cases" under title 11 and covers actions that are not, strictly speaking, bankruptcy cases themselves. The court holds that it includes causes of action, such as those in this case, that are created by title 11. *Accord* 1 Collier on Bankruptcy ¶ 3.01[b][ii] at 3–22 ("when a cause of action is ... created by title 11 ..., then that civil proceeding is one 'arising under title 11'").

This conclusion finds support in the legislative history. Section 1334(b) is based on former section 1471 of title 28. The House Report on that section states:

> The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11.... Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in ... chapter 5 of title 11. Many of these claims would also be claims arising under or related to a case under title 11.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), *reprinted in*, 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6401. *See also Ram Constr. Co. v. Port Authority*, 49 B.R. 363, 365 (W.D.Pa.1985) (Congress intended § 1334(b) to be as broad a grant of jurisdiction as former § 1471).

The plaintiff in these actions is asserting rights created by chapter 5 of title 11. Without that title, the plaintiff would have no cognizable claim for relief. Therefore, these actions are proceedings "arising under" title 11, within the meaning of the jurisdictional statutes. Consequently, the bankruptcy court has subject matter jurisdiction over them.

### C. The Assignment of the Debtors' Claims Under the Avoiding Powers

Given that the bankruptcy court has jurisdiction over these avoiding actions, the next question is whether the plaintiff is the proper party to bring them. Since all of the plaintiff's claims are creations of the Bankruptcy Code, resolution of this issue depends in part on the provisions of the Code.

The starting point in interpreting any statute is, of course, the words of the statute itself. The plaintiff's strong-arm claim is based on section 544(a)(1) of the Code; his preference claim is based on section 547(b); and his post-petition transfer claim is based on section 549(a). Those three sections all say that "the *trustee* may avoid" certain transfers of property. (Emphasis added.) The fourth claim is based on section 553(b)(1), which says that "the *trustee* may recover" certain setoffs. (Emphasis added.) Section 1107(a) gives a debtor in possession in a chapter 11 proceeding the rights and powers of a trustee in bankruptcy. So by the express language of the statute, either a trustee or a debtor in possession may bring the claims the plaintiff asserts in this action.[8] The defendants argue that *only* a trustee or debtor in possession may bring the claims and that he cannot assign them.

The plaintiff contends, however, that the statute allows these claims to be assigned, at least in a chapter 11 proceeding. He points primarily to two provisions of the Code—sections 1123(a)(5) and 1123(b)(3)(B).

The latter section says that a plan "may" provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any ... claim or interest" belonging to the debtor or to the estate. The plaintiff in these actions is clearly not the debtor, nor is he "the trustee," meaning the trustee of the debtor's estate. Assuming that claims based on a trustee's

---

**8.** Because the relevant language in each of these Code sections is similar and the parties have not distinguished the causes of action, the court will treat them generically as claims based on the debtors in possession's avoiding powers.

avoiding powers are claims "belonging to" the debtor or the estate, then, the plaintiff may only maintain these actions if he is "a representative of the estate appointed for such purpose." The plaintiff claims that, as the assignee of the avoiding powers, he is a representative of the estate appointed to bring these actions.

■ The court can find no cases construing the phrase "representative of the estate appointed for such purpose" as used in section 1123(b)(3)(B). However, that term would not seem to include the debtor in possession's assignee, since the assignee represents his own interests and hence cannot be considered a representative of the *estate*. Furthermore, it would be contrary to the spirit of chapter 11 to hold that the "appointment" of the representative could be by a unilateral declaration of the debtor in possession. In all other Code sections that speak of appointments, it is the bankruptcy court—not the debtor—who makes the appointment. *See, e.g.*, 11 U.S.C.A. §§ 105(b), 303(g), 701(a), 1102(a), 1104 & 1163. In keeping with the consistent meaning of this term throughout the Code, the court holds that, under section 1123(b)(3)(B), "a representative of the estate appointed" to prosecute these claims means a representative appointed by the court and not the debtor in possession's assignee.

■ The other section that the plaintiff relies on—section 1123(a)—reads in pertinent part:

Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—

. . . . .

(5) provide adequate means for the plan's implementation, such as—

. . . . .

(B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan....

*See also* 11 U.S.C.A. § 1123(b)(4) (a plan may "provide for the sale of all or substantially all of the property of the estate"). Thus, if the debtor in possession's avoiding powers are "property of the estate," section 1123(a)(5)(B) arguably authorizes their assignment (or "transfer") to a third party, such as the plaintiff here.

Section 541 defines "property of the estate" to include, among other things, "[a]ny interest in property that the trustee recovers" under sections 544, 547, 549 and 553. *Id.* §§ 541(a)(3) & 550; *see also id.* §§ 541(a)(4) & 551 ("property of the estate" also includes any interest in property "preserved for the benefit of or ordered transferred to the estate" under sections 544, 547 and 549). The plaintiff argues that "[n]o distinction can be drawn between recoveries and the lawsuits." Plaintiff's Memorandum in Opposition to Motion to Dismiss at 5. Thus, if money recovered under a trustee's avoiding powers is "property of the estate," so must the right to exercise those powers be "property of the estate." Such a result, however, ignores the clear language of the statute. The statute says "[a]ny interest in property that the trustee *recovers*," 11 U.S.C.A. § 541(a)(3) (emphasis added), *not* "that the trustee *can* recover." The trustee must exercise his avoiding powers and recover the property before it is considered property of the estate under section 541(a)(3). All the trustee (or debtor in possession) has before he recovers the property is a statutorily created right to bring an action to recover property.

The plaintiff argues that that right or power is itself "property of the estate." Section 541(a)(1) defines "property of the estate" (with certain exceptions not applicable here) as "all legal or equitable interests of the debtor in property as of the commencement of the case." It is well settled that this definition "includes all interests [in property], such as ... choses in action [and] causes of action, ... whether or not transferable by the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5963, 6136. *See also* 4 Collier on Bankruptcy ¶ 541.06 at 541–26. The trustee's avoiding powers, the plaintiff argues, are simply a chose in action. Where, as

here, that chose in action belongs to the debtor, it is by definition "property of the estate."

That interpretation of "property of the estate" makes reason stare. The plaintiff's interpretation would lead to the anomalous result that, where the court appoints a trustee in a chapter 11 proceeding, the cause of action would not be assignable, since it would belong to a trustee and not the debtor and hence would not be "property of the estate," whereas if the debtor remained in possession the same cause of action would be considered "property of the estate" and hence assignable (under the plaintiff's interpretation of section 1123).

The avoiding powers are not "property" but a statutorily created power to recover property. Moreover, the plaintiff's argument ignores the simple fact that Congress gave those powers to the trustee and to no one else. The powers belong to a debtor in possession only because he stands in the shoes of the trustee. "Property of the estate," on the other hand, is that property that belonged to the debtor in his own right [9] or that the estate later acquires. It is listed on the schedule of assets that the debtor is required to file with the court. *See* 11 U.S.C.A. § 521(1). This court has yet to see the schedule of assets that lists a debtor in possession's avoiding powers as an asset of the estate. That is because the avoiding powers are not a prepetition asset of the estate but only a power to augment the estate. Because the statute does not expressly include the avoiding powers as property of the estate and because the legislative history does not suggest that Congress intended such a result, the court concludes that the avoiding powers are not "property of the estate" within the meaning of the Code and therefore are not assignable.

This conclusion is bolstered by an unbroken line of cases, stretching back at least to 1909 and covering proceedings under both the old, 1898 Bankruptcy Act and the new Code, which hold that a trustee's avoiding powers are not assignable. *See, e.g., Webster v. Barnes Banking Co.,* 113 F.2d 1003, 1005 (10th Cir.1940); *Grass v. Osborn,* 39 F.2d 461, 461 (9th Cir.1930) ("the trustee in bankruptcy could not sell his right to set aside a preferential transfer"); *Belding-Hall Mfg. Co. v. Mercer & Ferdon Lumber Co.,* 175 Fed. 335, 339–40 (6th Cir.1909) ("If the delivery was a preference, the trustee only could maintain a suit to avoid it. He may not transfer to another this right of avoidance"); *Texas Consumer Fin. Corp. v. First Nat'l City Bank,* 365 F.Supp. 427, 430 (S.D.N.Y.1973) (a debtor in possession "may not assign his claim" to avoid a preference); *Klein v. Leader Elec. Corp.,* 81 F.Supp. 624, 626 (N.D.Ill.1948) ("The only right to set aside a preference resides in the Trustee ... and not in the creditors by way of subrogation or any other means"); *United Capital Corp. v. Sapolin Paints, Inc. (In re Sapolin Paints, Inc.),* 11 B.R. 930, 937 (Bankr. E.D.N.Y.1981) (recognizing "the well-settled principle that neither a trustee in bankruptcy, nor a debtor in possession, can assign, sell, or otherwise transfer the right to maintain a suit to avoid a preference"). *See also* 4 Collier on Bankruptcy ¶ 547.-52[1] at 547–176 ("Since the trustee is named specifically in section 547(b), it is clear that only he or a debtor in possession in a chapter 11 case has the power to avoid preferences under the Code").

The defendants claim that *Webster, supra,* is dispositive of the plaintiff's claims. In *Webster* the court stated that "the right of a trustee in bankruptcy to set aside a conveyance made in fraud of creditors vests in the trustee for the benefit of the creditors and is not assignable." 113 F.2d at 1005.

The plaintiff contends (and the court below agreed) that this declaration was mere dicta. *Webster* involved a debtor's conveyance of two parcels of land, one to each of

---

9. If the avoiding powers belonged to the debtor in his own right, presumably he would have an inchoate right of action even before he filed for bankruptcy. Under the plaintiff's theory, a pro-spective debtor should be able to assign this inchoate right at any time, assuming he can find a willing buyer, with potentially disastrous consequences for future creditors.

his sons. After the bank sued to set aside the conveyances as fraudulent, the debtor filed a petition in bankruptcy. The trustee in bankruptcy sold the estate's equitable interest in the land to the sons. The state court then set aside the original conveyances as fraudulent. The bankruptcy referee ordered that the sale of the estate's equitable interests be set aside and the land sold for the benefit of all creditors. The district court confirmed the referee's order, and the court of appeals affirmed that judgment. Although there was not an express assignment of the trustee's avoiding powers, the "sale" of the estate's equity to the sons was arguably equivalent to an assignment of those powers, and, according to the court's holding, that sale was improper.

■ Even if *Webster* is not dispositive of this action, the court would be inclined to follow the rule it states—namely, that the avoiding powers are not assignable.[10]

The plaintiff has failed to cite a single case in which a court has reached a contrary conclusion.[11] Instead, he argues that most of the cases the defendants have cited are inapplicable because they were decided under the old Bankruptcy Act or in a chapter 7 liquidation, not a chapter 11 reorganization, and hence were not governed by new section 1123, discussed above. Of course, whether this distinction has merit depends on whether the plaintiff's interpretation of section 1123 is correct, that is, on whether that section makes assignable the debtor in possession's avoiding powers.

The provisions of section 1123 that the plaintiff relies on had counterparts in the old Bankruptcy Act. Section 1123(a)(5)(B) is based on old section 216(10). The major differences are that the new provision is phrased in terms of "property of the estate," a concept new to the Code, and allows transfer to "one or more entities," whereas section 216(10) restricted transfer to "one or more corporations." Section 1123(b)(3)(B) is based on old section 216(13), which provided for retention and enforcement of claims by the trustee or "by an examiner appointed for that purpose" if the debtor continued in possession. The new provision allows a debtor in possession or an appointed "representative of the estate" (as opposed to an "examiner") to retain the claim. As noted, the cases decided under the old law were unanimous in holding that the trustee's avoiding powers were unassignable. There is simply nothing in the statutory language or the legislative history to show that Congress intended by these minor changes in statutory language to effect a change in this established principle. Moreover, the same factors that militated against assignment under the old Bankruptcy Act and in chapter 7 proceedings also apply in chapter 11 proceedings under the Code.[12]

With both statutory and case authority against him, the plaintiff argues that there are good policy reasons for allowing assignment of the avoiding powers in this case and no good reason to follow the accepted rule of nonassignability.

The purpose of the trustee's or debtor in possession's avoiding powers, the plaintiff argues, is to benefit primarily the debtor's unsecured creditors, by increasing the

---

10. Of course, this court is not as free as Mark Twain's Judge Robinson, who could not be bothered with "trying to conform to the caprices of other courts" and prided himself on the fact that he was "not acquainted with the customs of other courts, and ... not concerned to know what they are." M. Twain, *Those Extraordinary Twins*, in *Pudd'nhead Wilson and Those Extraordinary Twins* 259 (1922). This court is bound to follow as controlling precedent the decisions of the U.S. Court of Appeals for the Tenth Circuit and is therefore always interested in any statement by the Tenth Circuit on issues before it.

11. Courts have allowed creditors' committees to exercise avoiding powers, as the plaintiff notes, but only after the debtor in possession or trustee refused to or where he had a conflict of interest. *See In re Philadelphia Light Supply Co.*, 39 B.R. 51, 51–52 (Bankr.E.D.Pa.1984) and cases cited therein.

12. Not all chapter 11 proceedings are reorganizations. A chapter 11 proceeding, like a chapter 7 case, may result in liquidation as opposed to reorganization. 5 Collier on Bankruptcy ¶ 1123.01[5] at 1123–11.

available assets to be distributed among those creditors. *See, e.g., United Capital Corp. v. Sapolin Paints, Inc. (In re Sapolin Paints, Inc.),* 11 B.R. 930, 938 (Bankr. E.D.N.Y.1981) (a debtor in possession's avoiding powers are "for the purpose of ensuring equitable distribution of assets of an insolvent corporation among its creditors"; they are meant "to increase the return to creditors or augment the distribution to them"). The rule of nonassignability arose in cases where the assignment was made to some stranger to the estate and did not benefit creditors in any way. Here, the plaintiff argues, the assignment is not to a stranger to the estate but to creditors of the estate who, because of their priority under section 1129(a)(9), would be entitled to any money that the debtors in possession recovered under their avoiding powers. Allowing the assignment would streamline recovery of any preferential transfers by eliminating the need for the debtors in possession to sue (in effect) on behalf of the administrative claimants and then turn any recovery over to them. It would allow the administrative claimants to sue directly in their own right to recover money that ultimately would go to them anyway.

Moreover, the plaintiff argues, unsecured creditors *are* benefited by the assignment in this case. They can only be paid if the court confirms the debtors' plan for reorganization. Under section 1129(a)(9), the court can only approve the plan if the administrative claimants are paid first or agree to "a different treatment" of their claims. And the administrative claimants would only agree to a different treatment of their claims if they received an assignment of the debtors in possession's claims against the defendants. Thus, without the assignment, none of the creditors would have received the benefit they got from confirmation of the reorganization plan. The assignment therefore directly benefited all creditors.

Finally, the plaintiff argues, where the assignment is made part of the plan, as it was here, any abuse or one-sidedness can be easily detected and prevented. Other creditors can object to confirmation of the plan if they believe that they are hurt by the assignment. And because the court must confirm the plan, any assignment is also subject to judicial scrutiny, minimizing the chances for abuse.

The court is not convinced, however, that the assignment of the debtors in possession's avoiding powers in this case would further the policies underlying the bankruptcy law. First, although the administrative claimants may not be strangers to the estate, they may benefit disproportionately from the assignment. As noted, the avoiding powers are meant to benefit creditors generally and promote equitable distribution among all creditors. An assignment to one group of creditors benefits that group at the expense of others, since any money recovered goes to it, not to the estate to be divided among all creditors in accordance with the statutory scheme. It may be that if the money were to go to the estate the administrative claimants, because of their priority under the Code, would get it all anyway. But that is not necessarily so; it would depend on the amount recovered and the amount allowed to such priority claims. The assignment itself could provide that any excess recovery would be divided among other creditors. But that is not the case here. The agreement between the administrative claimants and the debtors says that any excess goes to the reorganized debtor, not to other creditors.

Second, although creditors may only recover if a plan is confirmed, assignment is not essential to confirmation of any plan. The plan could provide that the administrative claims would be paid from money the debtor in possession recovers under its avoiding powers. It is likely that the administrative claimants would agree to such a plan, thus facilitating confirmation, especially if they knew the avoiding powers had to be exercised by the debtor in possession and could not be assigned.

Third, allowing assignments places the court in the difficult position of scrutinizing each assignment for possible abuse, caus-

ing difficult valuation problems as the court tries to determine if the assignment was made for adequate consideration. The adequacy of consideration may depend on a variety of factors, all of which may not be before the court, such as the financial status of the prospective defendant, the likelihood of recovery and the cost of litigation to recover the transfers. Although other creditors may be trusted to scrutinize any assignment for possible abuse and object to confirmation if they find abuse, a plan may be confirmed over the objection of a creditor. *See* 11 U.S.C.A. §§ 1129(a)(7), (8) & (10) & 1141(a). And unless the future defendant who is a recipient of a preferential transfer is also a creditor of the debtor, he may not even receive notice of the confirmation hearing.

Most important, the actions to avoid transfers are drastic remedies. A trustee or debtor in possession is allowed to set aside what might otherwise be a valid transfer or security interest simply because the transferor has filed a petition for reorganization. Such great powers carry with them the potential for great abuse. Therefore, their exercise should only be entrusted to a fiduciary and court officer, to one who will exercise the powers responsibly and must answer for any abuse. A debtor in possession is an officer of the court and a fiduciary of the estate. *See, e.g., King v. United States,* 379 U.S. 329, 337 n. 7, 85 S.Ct. 427, 431 n. 7, 13 L.Ed.2d 315 (1964); *In re Modern Office Supply, Inc.,* 28 B.R. 943, 944 (Bankr.W.D.Okla.1983); *Walker v. Steele (In re Steele),* 26 B.R. 233, 234 (Bankr.W.D.Ky.1982). His assignee is not. The assignee exercises whatever powers he has for his own benefit, not for the benefit of the estate and not necessarily in the best interests of other creditors. For example, an assignee who brings an action to avoid a preference may settle the action for an amount that will satisfy his claims but would be less than he could reasonably be expected to recover had he acted as a fiduciary of the estate. Because the avoiding powers are meant for the benefit of all creditors, they should be exercised only by one who is answerable to all creditors and

to the court, namely the bankruptcy trustee or debtor in possession.

In short, the trustee's avoiding powers are a creature of statute. They are, in a sense, a delegation of governmental authority to set aside otherwise valid transfers or liens. Congress created these extraordinary powers for a specific purpose and entrusted them to a specific person. The Code says that the trustee or debtor in possession may exercise the avoiding powers. It does not say that the trustee or debtor in possession may delegate or assign them. The plaintiff would have this court conclude that, because the Code does not expressly prohibit their assignment, the powers should be assignable. *See Johnson v. Investment Leasing, Inc. (In re Johnson),* 51 B.R. 220, 222 (D.Colo.1985) (allowing a debtor to recover property of the estate under 11 U.S.C. § 549 where the trustee refused to do so, on the grounds that the statutory language does not specifically deny the debtor standing). The court believes, however, that, when Congress created these exceptional powers it also circumscribed their use, by limiting them to the trustee or debtor in possession. This limitation is supported by sound policy and over half a century of precedent. Certainly, if Congress intended the powers to be assignable, "a scrivener's pen was not wanting." *Summit Land Co. v. Allen (In re Summit Land Co.),* 13 B.R. 310, 315 (Bankr.D.Utah 1981). The court therefore concludes that the debtor in possession's powers under sections 544, 547, 549 and 553 are not assignable. To hold otherwise would, in effect, be to sanction the sale of a prerogative of the sovereign.

## D. Effect of Confirmation of the Reorganization Plan

The plaintiff asserts that, even if the assignment of the debtors' claims was invalid, the defendants are precluded from challenging the validity of that assignment because they failed to object to the assignment when the plan was confirmed.

Section 1141(a) of the Code states that

the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in, the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

The record on this appeal does not show whether the defendants fall within any of the categories of entities bound by confirmation.[13] Even if they were to come within section 1141(a), however, that section does not bar a post-confirmation challenge to the validity of an assignment made by the plan. The defendants are barred from litigating any matter in issue that was directly adjudicated or necessarily involved in the confirmation proceedings. *See American Sur. Co. v. Coral Gables First Nat'l Bank (In re Constructors of Florida, Inc.)*, 349 F.2d 595, 599 (5th Cir.1965), *cert. denied*, 383 U.S. 912, 86 S.Ct. 886, 15 L.Ed.2d 667 (1966). Even if the plan in this case provided for assignment of the claims, it did not assert that the assignment was valid, just as it did not make invalid the underlying transactions (the alleged preferential transfers to the defendants and their asserted liens). *Cf. Citicorp Acceptance Co. v. RUTI–Sweetwater (In re Sweetwater)*, 57 B.R. 354 (D.Utah 1985). The validity of the assignment was never in issue and was not determined in the confirmation hearing. In fact, the agreement between the administrative claimants and the debtors, which allegedly was incorporated in the plan and specifically provided that "the causes of action against Citicorp and First Financial ... may be retained by the Debtors insofar as necessary to preserve the causes of action," shows that the parties understood that the confirmation proceeding did not settle the question and that they anticipated a future challenge to the validity of the assignment. The defendants are therefore not barred from challenging the validity of the assignment in these proceedings.

### III. Conclusion

The bankruptcy court was correct in concluding that it had subject matter jurisdiction over these cases. The cases "arise under" title 11 within the meaning of 28 U.S.C.A. §§ 157 and 1334. The 1984 Act did not offend the appointments clause of the Constitution and hence did not rob the bankruptcy court of jurisdiction. However, the bankruptcy court erred in holding that the debtors in possession could validly assign their avoiding powers to the plaintiff. Because the purported assignment was invalid, the bankruptcy court's interlocutory order denying the defendants' motions to dismiss must be reversed. Accordingly, IT IS HEREBY ORDERED that the bankruptcy court's interlocutory order be vacated and these cases be remanded to that court with instructions that it enter an order granting the defendants' motions to dismiss.

---

**13.** The complaint alleges that the defendants are (or were) creditors of the debtors, but the defendants have not answered the complaint. The defendant Citicorp at least had notice of confirmation, as evidenced by its vote to reject the plan. *See Citicorp Acceptance Co. v. RUTI–Sweetwater (In re Sweetwater)*, 57 B.R. 354 (D. Utah 1985).