In re CHERNICKY COAL COMPANY, INC., Debtor.

TRAVELERS INDEMNITY COMPANY, Plaintiff,

v.

CHERNICKY COAL COMPANY, INC., Mid-Continent Insurance Company, and First National Bank of Fryburg, Pennsylvania, Defendants.

Bankruptcy No. 79–00292E.
Adv. No. 85–0091.

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 8, 1986.

Robert J. Blumling, for Travelers Indemnity Company.

Vedder J. White, for Mid-Continent Insurance Company.

Henry Ray Pope, III, for First National Bank of Fryburg, Pennsylvania.

Jeffrey T. Morris, for Travelers Indemnity Company.

OPINION

*Case Summary*

WARREN W. BENTZ, Bankruptcy Judge.

Travelers Indemnity Insurance Company filed a complaint against the defendants to avoid a post-petition transaction pursuant to § 549 of the Bankruptcy Code. The defendants responded with Rule 12(b) Motions to dismiss. After consideration of the arguments of counsel and the briefs of the

parties, we find that Travelers' complaint fails to state a claim upon which relief can be granted. Accordingly, and for the reasons discussed below, we will dismiss Travelers' complaint.

*Facts*

Chernicky Coal Company, Inc. ("Chernicky" or the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 1, 1979. At the time of the Chapter 11 filing, the Debtor was engaged in coal mining by strip operations in various Pennsylvania counties.

Pennsylvania law requires surface mining operators, such as the Debtor, to post surety bonds or other collateral with the Pennsylvania Department of Environmental Resources ("DER"). The collateral stands as a guaranty for the operator's faithful compliance with his obligation to reclaim (i.e., to resurface and restore) lands which have been disturbed by surface mining operations.

Subsequent to filing its Chapter 11 petition, the Debtor filed two Applications to Complete Bonding ("Bond Applications"). The Bond Applications requested court approval to obtain additional surface mining reclamation bonds and a heavy hauling bond which the Debtor needed in order to continue its mining operations post-petition. After receiving no objections to the Bond Applications, and upon consent by the committee of unsecured creditors, we issued Orders dated May 15, 1980 and September 8, 1980 approving the terms of the Bond Applications.

Under the terms of the Bond Applications, Travelers Indemnity Company ("Travelers") agreed to issue post-petition reclamation bonds, as surety, on behalf of the Debtor, as principal, for the benefit of the DER, as obligee. As in the past, the DER required the bonds as a precondition to issuing surface mining permits and licenses to the Debtor. Travelers further agreed, as surety, to issue a heavy hauling bond on behalf of the Debtor, as principal, for the benefit of the Pennsylvania Department of Transportation ("Penndot"), as obligee. On May 15, 1980, Travelers issued the two reclamation bonds, one in the amount of $49,700 and the other in the amount of $49,200. Also on that date, Travelers issued a heavy hauling bond in the amount of $34,000.

The terms of the Bond Applications, as approved by the Court, further provided that:

a collateral interest bearing account be established with Travelers as beneficiary, to be funded at the rate of 75¢ per ton for each and every ton of coal removed from the bonded property.

(Travelers' Exhibits A & B). In the event that the Debtor forfeited on the bonds, the account money was to be paid over immediately to Travelers, upon demand, to the extent necessary to cover Travelers' losses as surety. Despite the parties' apparent intent to establish a collateral escrow account, Travelers does not allege that a collateral escrow account was ever created for the benefit of Travelers. In fact, Travelers admits in paragraph 33 of its Complaint that no collateral escrow account was actually created for its benefit:

The debtor's failure to establish a collateral escrow account for the benefit of Travelers pursuant to the Order of Court constituted negligent and/or intentional, wanton and willful disregard of the [May 15, 1980 and September 8, 1980 Orders].

The Debtors' plan of reorganization was confirmed by an Order of Court dated April 27, 1981. A modified plan or reorganization was confirmed by an Order of Court dated September 14, 1981.

On December 19, 1980, prior to the confirmation of both the original and modified plans, the Debtor entered into a collateral escrow agreement ("Escrow Agreement" or "Escrow Account") with defendant First National Bank of Fryburg, Pennsylvania (the "Bank"). Defendant Mid-Continent Insurance Company ("Mid-Continent") was named as beneficiary of the Escrow Account. Like Travelers, Mid-Continent issued surface mining reclamation bonds to

the Debtor, and the Escrow Account was created to protect Mid-Continent in the event that it suffered losses as a result of a bond forfeiture by the Debtor. The Escrow Account was established post-petition without prior order of court, and was identified as account no. 7541 "Chernicky Coal Company Bonding Escrow Account."

From March, 1981 through July, 1984, Travelers received statements of account from the Bank for Escrow Account 7541. Travelers began receiving these statements after an agent of Travelers wrote a letter dated January 6, 1981 to the Bank advising the Bank, apparently erroneously, of its rights and interest in the Escrow Account.

In September, 1983 and in February, 1984, Penndot and the DER respectively declared forfeitures of the bonds that Travelers issued to those entities on behalf of the Debtor. The total amount of liability to which Travelers has been exposed by these forfeitures is $101,300.[1]

Following investigation of these forfeitures, Travelers made demand on the Bank to pay over to Travelers all funds on deposit in Escrow Account No. 7541, which at that time had a balance in excess of $12,-763.76. The Bank refused, advising Travelers that it was holding the funds in Escrow Account No. 7541 for the benefit of Mid-Continent. Thereafter, Travelers filed its § 549 Complaint to avoid the creation of Escrow Account No. 7541 as an unauthorized post-petition transfer. The Bank has since turned over the funds in Escrow Account No. 7541 to defendant Mid-Continent.

Travelers' complaint (the "Complaint") against the Debtor, Mid-Continent and the Bank seeks to set aside the Escrow Agreement as an unauthorized post-petition transfer of estate property in violation of § 549. Travelers requests that the account funds recovered from the avoided transfer be paid to Travelers in partial satisfaction of an administrative priority claim (based on the post-petition bond forfeitures) which it had previously filed in this case. Additionally, Travelers requests that any claims or interests which any of the defendants may assert to the Escrow Account be equitably subordinated under § 510 to Travelers' claims and interest therein.

The Bank's answer to the Complaint alleged (1) that we lack subject matter jurisdiction to hear the issues raised in Travelers' Complaint; (2) that Travelers' cause of action is barred by the applicable statute of limitations; (3) that Travelers has no standing to bring a cause of action under § 549; (4) that neither Travelers nor the Debtor advised the Bank that Escrow Account No. 7541 was to be maintained for the benefit of Travelers; (5) that the Bank never advised Travelers that Escrow Account No. 7541 was being maintained for Travelers' benefit; and (6) that Travelers' Complaint fails to state a cause of action against the Bank. Additionally, the Bank cross-claimed against Mid-Continent alleging that it is entitled to damages for contribution and indemnification if the Bank is obligated to pay any sums over to Travelers as a result of this lawsuit. Mid-Continent filed an answer denying the cross-claim.

Similarly, the Bank and Mid-Continent filed separate motions to dismiss pursuant to Bankruptcy Rule 7012 alleging that we lack subject matter jurisdiction, that Travelers lacks standing, and that Travelers' Complaint fails to state a cause of action. In its responses to the motions to dismiss, Travelers denied each ground for dismissal, and further requested the imposition of a constructive trust upon the funds held by Mid-Continent. Hearings on the above matters were held after which the parties submitted briefs.

### Issues

1. Do we have subject matter jurisdiction to hear and decide Travelers' Complaint?

2. Does Travelers, which is not the trustee in this case, have standing to assert a cause of action under § 549?

---

1. At present, Travelers has received $25,000 against the bond forfeitures pursuant to an irrevocable letter of credit issued by Peter Chernicky's bank for the benefit of Travelers. Peter Chernicky is a shareholder and officer of the Debtor.

3. Viewing Travelers' Complaint in the light most favorable to Travelers, does the Complaint allege facts which, if proved, would support a cause of action against the defendants under § 549? More specifically, where, without prior court approval, a Chapter 11 debtor, for the benefit and security of a bonding company which has issued bonds enabling the debtor to continue its mining operations post-petition, creates a collateral escrow account funded at the rate of 75 cents per ton of coal mined by the debtor, is the post-petition creation and subsequent transfer of funds into the escrow account a transaction in the ordinary course of the debtor's business and thus immune from attack under § 549?

*Jurisdiction*

■ We disagree with the defendants' assertion that we are without subject matter jurisdiction to hear Travelers' Complaint. Pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157, and the General Order of Reference of the United States District Court for the Western District of Pennsylvania dated October 16, 1984, we may hear and determine "all core proceedings arising under Title 11." 28 U.S.C. § 157(b)(1). The category of proceedings "arising under" Title 11 includes causes of action that are created by Title 11. *In re Sweetwater,* 55 B.R. 724, 729 (D.Utah, 1985). A § 549 cause of action to avoid unauthorized post-petition transactions is created by Title 11. *In re Sweetwater,* 55 B.R. at 729 (claims brought pursuant to §§ 549, 544(a)(1), 547(b) and 553(b)(1) "arise under" Title 11 and therefore fall within the bankruptcy court's subject matter jurisdiction). Therefore, we may hear and determine Travelers' § 549 Complaint.

This conclusion is further bolstered by the legislative history of § 1471 of Title 28 (the predecessor of § 1334(b)) which states that:

The phrase "arising under" has a well defined broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11.... any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in ... chapter 5 of title 11. Many of these claims would also be claims arising under or related to a case under title 11.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), *reprinted in,* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6401. Congress intended § 1334(b) to be as broad a grant of jurisdiction as former § 1471. *Ram Const. Co., Inc. v. Port Auth. of Allegheny County,* 49 B.R. 363, 365 (Bankr.W.D. Pa.1985). *See also In re Sweetwater,* 55 B.R. at 729.

Our conclusion that we have subject matter jurisdiction is not affected by the fact that the Debtor's Chapter 11 plan has been confirmed. The defendants argue that when the Debtor's Chapter 11 plan was confirmed, Bankruptcy Code § 1141 operated to vest all property of the estate in the Debtor, thereby leaving no estate to be affected by the outcome of the instant proceeding. From this, the defendants conclude that we have no subject matter jurisdiction.

■ We begin by noting that so long as a bankruptcy case is "open," there does not appear to be any limit on the court's jurisdiction under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157. It is true, as the defendants argue, that under § 1141, confirmation of the Debtor's plan vests property of the estate in the Debtor. However, the operation of § 1141 does not, by itself, close the case or otherwise divest the court of jurisdiction. Case closings are specifically governed by § 350. This bankruptcy case is still open. Therefore, we continue to have subject matter jurisdiction over core proceedings, like the instant one, which fall within 28 U.S.C. § 157. *C.f., In re Mandalay Shores,* 62 B.R. 758 (Bankr.Fla.1986) (order dismissing Chapter 11 case did not

divest the court of jurisdiction to make subsequent professional fee awards).

The defendants' argument is further weakened by the operation of § 549(d). Section 549(d) requires an action to be brought under § 549(a) no later than the earlier of (1) two years after the date of the transfer sought to be avoided or (2) the time the case is closed or dismissed. One can conceive of a situation where an unauthorized post-petition transaction has been effectuated one week prior to the confirmation of a 4 year plan of reorganization. In that case, an avoidance action under § 549 could be brought, and presumably a court would have jurisdiction to hear and determine the complaint, almost two years after the confirmation date of the plan. It is obvious, then, that the mere fact that a plan has been confirmed is not sufficient by itself to divest us of subject matter jurisdiction. Thus, the defendants' argument that confirmation of the Debtor's plan of reorganization by itself operated to divest us of jurisdiction is not well founded.

### Standing

■ The defendants allege in their Rule 12(b) motions that Travelers does not have standing to file a complaint under § 549. The defendants rely on the express language of § 549 which gives a "trustee" the power to avoid a post-petition transaction. The defendants reason that since Travelers is not the trustee in this case, Travelers has no standing to assert § 549.

We agree that a superficial reading of § 549 supports the defendants' argument. We are also aware of the cases outside of the Third Circuit which hold that creditors lack standing to exercise avoidance powers under § 549. *See e.g., In re Ciavarella,* 28 B.R. 823 (Bankr.S.D.N.Y.1983). Nevertheless, the Court of Appeals for the Third Circuit has ruled to the contrary in a substantially similar context. *See In re McKeesport Steel Castings Co.,* 799 F.2d 91 (3d Cir.1986).

In *McKeesport Steel,* a secured creditor challenged the standing of an administrative claimant to recover certain administrative expenses under § 506(c) on the ground that § 506(c) expressly confers such a right on the "trustee." The Court noted that a number of bankruptcy courts, including those in this circuit, have held that parties other than the trustee have standing to recover even though the statutory language would appear to give only the trustee the cause of action. *Id.* at 93–94 (citations omitted). The Court explained that:

> [t]he rule that individual creditors cannot act in lieu of the trustee is often breached when sufficient reason exists to permit the breach. In this case neither the debtor in possession nor a creditors committee had reason to make a claim on behalf of Equitable, [the administrative claimant asserting standing under § 506] when the debtor thereby would be required to pay for utilities it had received without charge following the date that its petition was filed. Thus, because Equitable Gas had a colorable claim for expenses and was the only creditor that would zealously pursue that claim, it has standing to bring a § 506(c) action.

*Id.* at 94 (citation omitted).

In the instant Chapter 11 case, there is no trustee to file the § 549 complaint on behalf of Travelers. Moreover, the Debtor has no reason to file a complaint against Mid-Continent on Travelers' behalf. In fact, were the Debtor to file such a complaint and be successful in avoiding the Escrow Account, the Debtor could be held liable to Mid-Continent under the terms of the Escrow Agreement, for the amounts that were required to be maintained in the Escrow Account. Additionally, a § 549 lawsuit by the Debtor against Mid-Continent, even if not successful, likely would engender feelings of ill will between the parties that would have a pernicious effect on the Debtor's ability to secure much needed bonds from Mid-Continent in the future. Therefore, Travelers is the only party which has reason to zealously pursue a § 549 claim against Mid-Continent. In accordance with the rule enunciated in *McKeesport Steel,* Travelers has standing to file a complaint under § 549.

### The Rule 12(b)(6) Motions

We turn now to the defendants' argument that Travelers' Complaint fails to state a claim upon which relief can be granted.

In ruling on a Rule 12(b)(6) motion, "the court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Windsor Communications Group, Inc.*, 63 B.R. 126, 129 (Bankr.E.D.Pa.1985) (citations omitted). Furthermore, all allegations of the complaint are deemed to be admitted. *Id.* The factual allegations must be viewed in the light most favorable to the Plaintiff, and the Complaint should not be dismissed unless it appears beyond a doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id. citing Hishon v. King & Spalding*, 464 U.S. 959, 104 S.Ct. 389, 78 L.Ed.2d 334 (1983) and *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also In re Cresta*, 40 B.R. 953 (Bankr.E.D. Pa.1984).

Viewing all of the allegations in Travelers' Complaint in the light most favorable to Travelers, we find that the Complaint fails to state a claim against the defendants under § 549. The gravamen of Travelers'· Complaint—that creation of the Escrow Agreement without prior Court approval was an avoidable post-petition transaction—is predicated on the assumption that prior Court approval was required. We conclude, however, that no prior Court approval was required to establish the Escrow Account.

Section 1108 of the Bankruptcy Code states that unless the court provides otherwise, the debtor in possession may continue to operate its business. Here, the court has not provided otherwise. Therefore, throughout its organization, the Debtor has been authorized to continue its normal business operations.

Section 363(c)(1) provides that:

If the business of the debtor is authorized to be operated under section ... 1108, and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or hearing.

11 U.S.C. § 363(c)(1). We have not restricted the scope of the Debtor's business operations during its reorganization. Therefore, during its reorganization, the Debtor has been authorized to enter into post-petition transactions and use estate property "in the ordinary course of business" without notice, hearing or prior court order. The dispositive question, then, is whether creation and funding of the Escrow Account were transactions in the ordinary course of the Debtor's business.

As one District Court has explained: The legislative history of § 363 provides no test or guideline concerning the scope of the "ordinary course of business" standard. Hughes, *"Wavering Between the Profit and the Loss": Operating a Business During Reorganization Under Chapter 11 of the New Bankruptcy Code.* 54 Am.Bankr.L.J. 45, 74 n. 207 (1980); *see* H.R.Rep. No. 595, 95th Cong. & Admin.News 1978, p. 5787, *reprinted in,* King, et al., 2 App. *Collier on Bankruptcy* (1979). Nonetheless, the apparent purpose of requiring notice only where the use of property is extraordinary is to assure interested persons of an opportunity to be heard concerning transactions different from those that might be expected to take place so long as the debtor in possession is allowed to continue normal business operations under 11 U.S.C. § 1107(a) & § 1108. The touchstone of "ordinariness" is thus the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business. So long as the transactions conducted are consistent with these expectations, creditors have no right to notice and hearing, because their objections to such transactions are likely to relate to the bankrupt's chapter 11 sta-

tus, not the particular transactions themselves.

*In re James A. Phillips, Inc.*, 29 B.R. 391 (D.C.S.D.N.Y.1983).

■ In the instant case, the Debtor was required to obtain, and in the ordinary course of its pre-petition business did obtain, reclamation and other bonds which it needed to carry out its mining operations. Since reclamation bonds or equivalent collateral are necessary to obtain mining permits and licenses from the DER, and since the Debtor must have licenses and permits to continue mining operations during its reorganization, it was reasonable for interested parties in this bankruptcy to have expected the Debtor to take steps to secure such bonds post-petition as well. In securing necessary bonds, the Debtor did nothing post-petition that it did not do pre-petition in the ordinary course of its regular business activities. Accordingly, we find that creation of the Escrow Account to secure the Debtor's bonds was a transaction in the ordinary course of the Debtor's business and therefore did not require prior court approval.

We do not decide whether an up-front lump sum payment of a large amount of cash from a debtor's working capital for a reclamation bond is or is not a payment in the ordinary course of business (i.e., "large" in relation to the debtor's working capital). In the case at bar, the funding was incremental in accordance with production. Presumably, the 75 cents per ton paid into escrow was the approximate cost of restoration of the disturbed surface, and was therefore a necessary cost of production per unit. We therefore need not decide whether a lump sum prepayment for a reclamation bond requires court approval as a payment not in the ordinary course of business.

Since the creation and funding of the Escrow Account was an authorized post-petition transaction, Travelers' Complaint fails to state a claim under § 549 against Mid-Continent. And since under Travelers' § 549 theory liability against the Debtor and the Bank is dependent on a successful § 549 action against Mid-Continent, it follows with equal force that Travelers' Complaint fails to state a cause of action against the Debtor and the Bank for a constructive trust and equitable subordination. For the same reason, we need not address the Bank's assertion that Traveler's complaint is barred by the statute of limitations. Therefore, Travelers' Complaint against the Debtor, the Bank and Mid-Continent will be dismissed by separate order.