## HASLEY v. BUNTE.

No. 22845.　Feb. 25, 1936.

Rehearing Denied April 7, 1936.

P. E. Gumm, for plaintiff in error

Hayson & Lukenbill and Raymond Everest. for defendant in error.

PER CURIAM.　The parties will be referred to as they appeared in the trial court.

Plaintiff, Ida F. Hasley, was the sister of Mrs. John F. Bunte, who died on June 23, 1927, intestate and childless. Deceased's heirs were her sister, plaintiff herein, and her husband, John F. Bunte, defendant.

Upon the original trial defendant's demurrer to the evidence of plaintiff was sustained. Upon an appeal to this court, that judgment was set aside, with instructions to overrule defendant's demurrer to the evidence. See Hasley v. Bunte, 145 Okla. 81, 291 P. 569. Upon the second trial, a jury was waived: the case tried by the court, who heard all the evidence and rendered a. judgment, both generally and with special findings, in favor of the defendant.

From that judgment, plaintiff prosecutes this appeal.

Plaintiff and her deceased sister were each owners of an undivided one-half interest in the real estate situated in Oklahoma county, the property herein involved. The Buntes lived on a farm near Britton, Okla. Early in May, 1927, defendant, Bunte, had one R. M. Whisler, president of a bank at Britton, prepare two warranty deeds, one of which purported to convey deceased's interest in the property in controversy to the defendant, her husband. Bunte came to Whisler's bank alone. The deeds were filled in by Whisler, but undated. Neither was the acknowledgment dated. Bunte arranged for Whisler, who was also a notary public, to come out to the Bunte farm ,and take Mrs. Bunte's acknowledgment a few days later, she being ill at the time. Before Whisler got out to the Bunte farm, however, it appears Mrs. Bunte improved to the extent of being able to come to town, and on or about May 13. 1927. both Mr. and Mrs. Bunte journeyed to Whisler's bank.

There is little dispute as to what occurred at the bank. Banker Whisler testified that "Mrs. Bunte said she had got to feeling better and they were on their way to Oklahoma City and thought they would come in and **have me acknowledge the deed** and save me a drive out there"; that Mrs. Bunte signed both deeds at that time; that he, Whisler, signed his name to the deeds, affixed his seal thereon; and "laid them down on the desk in front of Mrs. Bunte, as I remember John just picked them up and they left, putting them in his pocket as they went out." It is admitted that the deeds were never dated. nor was the acknowledgment dated, Whisler explaining, "I left it blank and then overlooked it that day, and I just overlooked it, in a hurry, I guess."

On cross-examination, Whisler repeated that Mrs. Bunte said she had come in **"to sign the deed."**

Deceased died on June 23, 1927, and the deed in question was not filed by defendant until after her death, to wit, on July 1, 1927.

Plaintiff brought an action for the cancellation of said deed, alleging: First, that said deed or conveyance is not in fact the deed or conveyance of the deceased; second, that it was not signed, executed and acknowledged by her as required by law; third, that if it was made and executed by her, it was not delivered during her · lifetime, or at any subsequent time, as required

by law; and, fourth, that deceased was not mentally competent to sign or acknowledge such instrument and had no proper knowledge of her purported acts.

1. The first allegation is a bare conclusion of the pleader, requiring no comment.

2. Was the deed signed, executed and acknowledged according to law? Neither the instrument nor the acknowledgment was dated, but this irregularity would not vitiate the instrument, nor does counsel for plaintiff so contend.

3. Was there a valid delivery? J. W. Furrow testified that on May 16, 1927 (three days after the purported execution of the deed), he had a conversation with the plaintiff, the defendant and Mrs. Bunte, asking them to place a sale price on the land in question; that the two sisters privately discussed the matter and gave him a figure that was ridiculously high. Furrow had had other dealings with the plaintiff and the Buntes and the discussion just noted included certain other tracts as well.

R. P. Pyle, a real estate broker, was present during at least a part of the above discussion. Both Furrow and Pyle agreed that Mr. Bunte at that time made no claim to the property in question, and that Mrs. Bunte took an active part in the negotiations. Counsel strongly urges that this incident contradicts any intention on the part of the deceased to have previously deeded the property over to the defendant.

A scrutiny of the testimony of Furrow and Pyle, however, hardly supports that contention. Furrow was not sure that Bunte was even present. He thought the defendant was present part of the time. He explained "There was very little conversation at any time between Mr. Bunte and myself, if any, and I think there was very little reference made to the transaction directly with Mr. Bunte." He said the deal they closed on May 16th was one they had been previously discussing several days before.

Pyle said that "Mr. Furrow asked Miss Hasley, plaintiff, something about what she would take for the rest of the land there in the section * * * and said if she put the right price on it, he might buy the strip and * * * that Miss Hasley and Mrs. Bunte put a price on it." Pyle was certain Mr. Bunte was present at this time and said, "they went out in the hall several times and came back in." "They" apparently meant the two sisters, although the witness might have meant to include the defendant. When

"they" came back to renew the discussion, witness Pyle explained, Miss Hasley, the plaintiff gave him the price.

Both witnesses agreed that the defendant made no statement then, indicating his ownership of the property in question. We hardly feel that his silence, assuming the truth of the above testimony, could be a serious evidence of noninterest, nor do we feel that Mrs. Bunte's continued interest in the matter of various tracts of farm land, on which negotiations had been pending for some time, could be regarded as sufficient to negative the intent expressed in the deed.

The most impressive evidence relating to the grantor's intent involves the testimony of Willie A. Voight. This witness, a neighbor, living three miles from the Buntes, stated that he called at the Bunte place on the 19th of June, 1927; that no one was home and that he called again on the 20th day of June (three days before Mrs. Bunte's death), to get some setting eggs; that he saw Mrs. Bunte on his second visit; that she was lying in bed sick; that Miss Hasley, plaintiff, was also there. To quote from his testimony:

"Well, Mrs. Bunte asked Miss Hasley what those papers were John had her to sign. And Miss Hasley asked her where she placed them, and Mrs. Bunte said she placed them in the buffet, and in a few minutes later Mr. Bunte stepped in and Miss Hasley asked where the papers were; he said they was oil and gas leases and Miss Hasley called Mrs. Bunte's attention and asked her if she signed a deed and will and Mrs. Bunte said no, that John told her they was oil and gas leases."

Voight said he reached the Bunte place about 1:30 p. m. on the 20th, and stayed about 15 minutes. The plaintiff failed to corroborate witness Voight, her testimony being silent on the subject of his purported visit. Numerous witnesses, on the other hand, impeached Voight's testimony.

Dr. Young, the last attending physician, testified Mrs. Bunte was brought home from the hospital about 1 p. m. on the 19th of May; that she was unconscious, or "hardly semi-conscious," when he first saw her at that time.

J. R. Bonebright, a nephew of defendant, who with his wife had come from Nebraska apparently on account of Mrs. Bunte's illness, testified he and his wife reached the Bunte place about 12:30 on the 20th, staying there until the day before her death; that she was unconscious from the time of their arrival until they left on the 22nd;

that Willie Voight was not at the Bunte home during this period of time. His wife, Martha Bonebright, stated Voight was not at the Bunte farm; that she was there from the 20th at noon until the 22nd; that Mrs. Bunte "didn't know anyone, if you call that unconscious."

Hiram Haddock, the Bunte's hired man, who lived on the farm, testified that he was home when Mrs. Bunte was brought from the hospital in an ambulance; that he was there nearly all day; that he did not see Voight; and that Mrs. Bunte "didn't know me."

John Cannon, another employee on the farm, testified largely to the same effect.

These witnesses were disinterested and so uniformly deny Voight's being even present as he described, and the condition of Mrs. Bunte was obviously so serious, that it is easy to understand why the trial court chose to question, as he doubtless did, the testimony of Mr. Voight.

Plaintiff's counsel contends that Mrs. Bunte assumed she was signing an oil and gas lease instead of a deed. No evidence was offered to substantiate such contention, except that of Mr. Voight, above quoted.

As to the execution and delivery of the deed by deceased, Mr. Whisler's testimony was supported by W. J. Nicholson, J. R. Wildman, and W. J. Hutchison, disinterested customers of the bank. Nicholson did not remember the exact date, about May 15th, he thought. He saw the Buntes enter the bank, joked and talked with her, said they told him they had come in "to fix up some papers"; that they sat down at the desk, and, in answer to the question, "Whom did you see sign the deed"? replied, "I seen Mrs. Bunte." He explained the deeds then "was folded up and Mrs. Bunte handed them to Mr. Bunte and he put them in his pocket right there." Hutchison and Wildman testified along similar lines.

Not only was the testimony of Whisler and the above three bystanders in the bank uncontradicted, but three other witnesses testified that prior to May 13, 1927, deceased had told them on separate occasions that she had been "trying to get up there to give Mr. Bunte a deed to her property, that she intended to as soon as she could get to town," and similar conversations, evidencing her intention to transfer this property to her husband.

J. H. Myers, of Oklahoma City, testified that deceased told him in May, 1927, that she "had made John a deed to all her real estate."

"The mere handling of the deed to the grantee is not conclusive evidence of an intended delivery." Snodgrass v. Snodgrass, 107 Okla. 140, 231 P. 237.

But where, as in this instance, the language of the instrument is so eloquently supported by previously expressed intentions of the grantor, coupled with the uncontroverted signing, acknowledgment, and delivery of the deed by her, as described by four disinterested witnesses, we are irresistibly drawn to the conclusion that deceased, by both her words and acts, intended to divest herself of title.

Since briefs were submitted, counsel for plaintiff has called to our attention the case of Loosen v. Stangl, 163 Okla. 231, 22 P. (2d) 364, involving a delivery of a deed by the grantor to a third person, with the life estate retained by the grantor, to be delivered upon grantor's death, which facts we do not feel are similar to the case at bar.

4. Was deceased mentally competent to sign or acknowledge the deed, and did she have proper knowledge of her acts? We have scrutinized the record and find no testimony whatever directed at Mrs. Bunte's lack of mental competency. She was in failing health, but, even under plaintiff's testimony, three days after the execution of the deeds, was taking an active part in important business transactions, indicating a very normal "knowledge of her acts."

No fraud or coercion was alleged or proved.

"A husband has the right to convey land to his wife * * * either as a gift outright, or in payment of a debt owed to her, and, in the absence of fraud or interests of creditors, the presumption of law is in favor of such conveyance." Baldridge v. Zigler, 103 Okla. 219, 229 P. 831.

"In an equitable action in this jurisdiction, presumption is in favor of the finding of the trial court, and same will not be set aside unless clearly against the weight of the evidence. Town of Rush Springs v. Bentley, 75 Okla. 119, 182 P. 664; Bilby v. Stewart, 55 Okla. 767, 153 P. 1173." Weaver v. Drake, 79 Okla. 277, 193 P. 45.

We have carefully examined and reviewed the evidence in this case, and conclude that the plaintiff failed to establish sufficient proof warranting the relief prayed for.

Judgment affirmed.

460

The Supreme Court acknowledges the aid of Attorneys Hal Crouch, W. I. Williams, and Felix Bodovitz in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Crouch and approved by Mr. W. I. Williams and Mr. Felix Bodovitz, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and WELCH, PHELPS, CORN, and GIBSON, JJ., concur.