**NATIONAL CONVENIENCE STORES, INC., Appellant,**

v.

**Albert MARTINEZ, et ux., Appellees.**

**No. 9768.**

Court of Appeals of Texas, Texarkana.

Dec. 12, 1989.

Rehearing Denied Jan. 3, 1990.

Steve Grossman, Schlanger, Cook, Cohn, Mills & Grossberg, Houston, for appellant.

Lloyd M. Lunsford, South Houston, for appellees.

BLEIL, Justice.

National Convenience Stores, Inc. appeals an adverse judgment entered in favor of Albert and Elaine Martinez for breach of contract, physical pain, mental anguish, and damage to their credit and business reputation. National Convenience Stores' main contention is that the lease cancellation agreement entered into between it and the Martinezes unambiguously canceled the existing lease between the parties; thus precluding any recovery by the Martinezes. We agree and reverse the trial court's judgment.

On July 18, 1980, the Martinezes entered into an agreement with Harris T. Neely leasing a building described in the lease as follows:

> The Harris and Wilson Two League Grant, A–32, which is the tract conveyed by G.G.N. Investment Company to Durell Carother and T. Jack Fegins, Deed dated February 2, 1945, and duly recorded in the Deed Records of Harris County, Texas, Volume 1364, Page 523, or more commonly known as: 997 and 999 Lockwood Drive, Houston, Texas.

While the lease was still in effect, Neely sold the property to National Convenience Stores, which became the new lessor.

National Convenience Stores planned to build on the property and began negotiating with the Martinezes to cancel the lease. Those negotiations culminated in the execution of a document entitled "LEASE CANCELLATION." National Convenience Stores paid the Martinezes $20,000.00 and agreed that no further rent would be due under the lease. As National Convenience Stores had planned, it razed the existing building and replaced it with a new one.

The Martinezes complained after the building was demolished and filed this lawsuit claiming that the lease cancellation agreement canceled the lease only as to that part of the premises known as 997 Lockwood, because that was the only address stated in the recitation of facts section of the "LEASE CANCELLATION." National Convenience Stores, on the other hand, contended that the lease cancellation agreement canceled the lease in its entire-

ty. Both parties treated the cancellation agreement as unambiguous.[1]

The trial court determined that the agreement unambiguously canceled the lease only with respect to the premises commonly known as 997 Lockwood and submitted the case to the jury based upon the premise that only a part of the lease had been canceled. The jury found that there was no mutual mistake; that by destroying the building National Convenience Stores had caused physical pain and mental anguish to the Martinezes; and that it had damaged the Martinezes' credit. The jury found damages and the trial court entered judgment on the verdict.

The threshold question which we must address concerns the legal effect of the lease cancellation agreement. If the agreement canceled the lease only as to a portion of the leased premises, then the judgment on the verdict might stand. On the other hand, if the agreement canceled the lease with respect to the entire leased premises, then the acts of National Convenience Stores were proper and the judgment must be reversed and rendered in its favor.

■■■ In construing a written contract, the primary concern of this Court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v.*

1. Because the document itself is the focal point of this case, it is appropriate that it be set out in full. It provides the following:

LEASE CANCELLATION

RECITATION OF FACTS:

(A) By Lease dated July 18, 1980 Harris T. Neely as Lessor and Albert Martinez and Elaine Martinez (hereinafter jointly called Lessee) as Lessee, leased a store building at 997 Lockwood, Houston, Texas, (hereinafter called the Leased Property).

(B) National Convenience Stores Incorporated (hereinafter called Lessor) is the successor in interest to Harris T. Neely and now occupies the status of Lessor in the Lease.

(C) Lessor and Lessee wish to cancel the Lease upon the terms stated herein.

(D) Lessor intends to commence construction activities at 997 Lockwood on January 4, 1983 or at an earlier date if Lessee has earlier vacated the Leased Property.

AGREEMENT:

Lessor and Lessee, in consideration of the payment of money and other benefits stated herein, do hereby agree:

1. The Lease shall terminate upon the earlier to occur of (a) December 31, 1982 or (b) Lessee's removal of Lessee's operations and equipment and furnishings from the Leased Property and Lessor's payment of $20,000 to Lessee as hereinafter stated.

2. And for Lessee's earlier termination of Lessee's rights under the Lease, Lessor shall pay Lessee $20,000 at the time Lessee removes all of Lessee's operations and equipment and furnishings from the Leased Property, but no payment shall be made unless such removal occurs on or before December 31, 1982.

3. Lessee may furnish a sign no larger than four feet by eight feet advertising the address of Lessee's new restaurant operations. Lessee may install the sign on 4″ × 4″ posts at a location on the Lockwood side of the lot as designated by Lessor so as not to interfere with Lessor's construction activities. Lessor shall have no obligation to maintain the sign

or repair it if vandalized or damaged. Lessee may maintain the sign for a period of 60 days from when the sign is installed or until April 1, 1983 whichever occurs first.

4. Lessee may remove any and all items from the Leased Property, including parts of the building but Lessee assumes all risk in doing so and hereby indemnifies and holds Lessor harmless from all loss arising in any way from such removal whether done by Lessee or any party claiming through him. Lessee shall have no right to remove any items from the Leased Property after Lessee has been paid the $20,000 mentioned above.

5. Lessee shall have no liability to pay rent under the Lease from October 1, 1982 if Lessee vacates the property on or before December 31, 1982, but if Lessee fails to vacate by December 31, 1982, all rent and all other amounts which would have accrued under the Lease except for this clause shall then be immediately due and payable as required by the Lease.

6. Because Lesssor (sic) intends to start construction activities on January 4, 1983 or earlier if Lessee vacates the Leased Property sooner, Lessee acknowledges that the December 31, 1982 removal date is critical to Lessor's plans for the property and that Lessee's kindly removal is of the essence of this agreement. If lessee fails to timely vacate the Leased Property, Lessor shall be entitled to summary injunctive relief implementing such removal.

7. Lessee acknowledges that, because Lessor intends to demolish the building commencing January 4, 1983, (or sooner), Lessor will make no repairs to the Leased Property. Lessee waives and releases any and all claims arising from or relating to (a) the condition of the Leased Property or (b) the fact that repairs thereto are not or have not been made.

IN WITNESS WHEREOF, Lessor and Lessee have executed this Lease Cancellation this 29th day of October 1982.

*Coker,* 650 S.W.2d 391, 393 (Tex.1983). If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the Court will construe the contract as a matter of law. *Coker,* 650 S.W.2d at 393. We must give effect to the objective intention of the parties as expressed or as apparent in the writing. *Westwind Exploration v. Homestate Savings Ass'n,* 696 S.W.2d 378, 382 (Tex.1985).

■ The agreement is entitled "LEASE CANCELLATION." It contained these provisions: the lease dated July 18, 1980, was to be terminated; the Martinezes were under no further obligation to pay any lease payments; the Martinezes were paid $20,000.00 for the early termination of their rights under the lease; the Martinezes were allowed to install a sign to advertise the address of any new business operation; and National Convenience Stores intended to demolish the building. We hold that the plain language of the lease cancellation agreement operated to cancel the entire lease of July 18, 1980.

■ Additional support for our decision exists. Ordinarily, a later contract is incorporated with or correlated to an old agreement when that is the intention of the parties expressed in the later agreement. *Keith A. Nelson Co. v. R.L. Jones, Inc.,* 604 S.W.2d 351, 353 (Tex.Civ.App.–San Antonio 1980, writ ref'd n.r.e.). Further, a reasonable interpretation of an agreement will always be preferred to one which is unreasonable. *Westwind Exploration,* 696 S.W.2d at 382. The obvious and stated purpose of the cancellation was so that the building could be demolished and a new structure could be erected. This, coupled with the provision for rent cessation and the provision that the Martinezes could erect a sign giving the new location of their business, makes unreasonable a construction that the lease was merely canceled in part. Nowhere in the agreement does it state that only part of the lease is to be canceled; rather, it expressly states that the lease of July 18, 1980, is to be terminated. Also, we look to the lease to determine what property was being leased. The lease gives a legal description of the property. A lease is a grant or devise of realty which must essentially meet the requirements found in a deed. *Jack v. State,* 694 S.W.2d 391 (Tex.App.–San Antonio 1985, writ ref'd n.r.e.). Thus, the legal description of the property controls over the common description, or street address. Since the parties' expressed intent was to cancel the lease and the lease gives a legal description of the property, we must consider the legal description given in the lease as controlling.

■ National Convenience Stores also contends that since the entire lease was canceled, the Martinezes cannot recover damages for past physical pain, mental anguish, and damage to their credit and business reputation which flowed from the destruction of the building. We agree. All of the questions submitted to the jury on these damages contain express language as to whether the particular damages resulted from the building's being demolished. Without a breach of the lease, the Martinezes cannot recover these damages since they are founded on breach of contract or a right growing out of breach of contract. *See International Printing Pressmen and Ass'ts Union v. Smith,* 145 Tex. 399, 198 S.W.2d 729 (1946).

The trial court's judgment is reversed and judgment is here rendered that the Martinezes take nothing.