In re Larry E. WAGNER, Debtor.

Larry E. Wagner and Ronda J. Winnecour, Trustee, Plaintiffs,

v.

Christiana Bank & Trust Company as Owner Trustee for Security National Funding Trust, Defendant.

Bankruptcy No. 04–34875–TPA.
Adversary No. 06–2179–TPA.

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 5, 2006.

---

Jana S. Pail, Esq., Bellevue, PA, for Debtor.

Ronda J. Winnecour, Esq., Pittsburgh, PA, Chapter 13 Trustee.

William J. Levant, Esq., Kaplin, Stewart, Meloff, Reiter & Stein, P.C., Blue Bell, PA, for Defendant.

### *MEMORANDUM OPINION*

THOMAS P. AGRESTI, Bankruptcy Judge.

Currently before the Court is the *Motion for Summary Judgment* filed by the Debtor, Larry E. Wagner, as joined by the Chapter 13 Trustee, and the *Motion of Defendant, Christiana Bank & Trust Company for Summary Judgment Pursuant to F.R.B.P. 7056* filed by the Defendant, Christiana Bank & Trust Company. Both motions relate to the Objection to Claim jointly filed by the Chapter 13 Trustee and the Debtor now in the form of an adversary proceeding. For the reasons expressed below, although numerous issues are now resolved streamlining the matter and allowing it to proceed to trial, a genuine issue of material fact exists as to the central claim in this dispute. Therefore, the cross-motions for summary judgment are denied.

### *FACTS*

In 1997, the Debtor, Larry E. Wagner ("Debtor") and his then-wife, Deanna Bartman, purchased real property located at R.R.1 Box 149, Breezewood, Bedford County, PA ("Mattie Road Property"). The Debtor financed the purchase of the Mattie Road Property with a loan secured by a mortgage. On August 6, 1998, the Debtor refinanced the original mortgage on the Mattie Road Property with a $61,000 loan from North American Mortgage Company, which loan was assigned to the Defendant, Christiana Bank and Trust Company ("Bank"). The refinance loan was secured by a mortgage ("Mortgage") on the Mattie Road Property.

While the property description attached to the Mortgage included a description referring to a specific parcel number and incorporating a metes and bounds legal description from a prior deed, the first page of the Mortgage listed the address of a different property, i.e. "R.R. 1 Box 10A, Clearville, PA 15535," a property which the Debtor did not own during any relevant time period. And although the correct mortgagee was identified on the face of the Mortgage and indexed accordingly, the exhibit containing the legal description described an entity known as "America's Wholesale Lender" as the "mortgagee." At the refinance closing, the Debtor signed the note and accompanying Mortgage in the presence of Paul Rametta ("Rametta"), a notary public and the closing settlement agent. Even though at closing the Debtor informed Rametta that the address on the Mortgage was incorrect, Rametta failed to make any correction to the Mortgage document prior to the time of its recording. While Rametta notarized all of the relevant closing documents, including the Mortgage and deed, he failed to date the acknowledgment portion of the Mortgage.

After the Mortgage was recorded, and apparently upon realizing the absence of a "dated" acknowledgment, the Bedford County Recorder's Office returned the Mortgage to Rametta for purposes of correction. At that point, LeAnn Houser ("Houser"), also a notary public and co-employee to Rametta, employed by the company providing the settlement services, executed a second acknowledgment to the Mortgage indicating that the Debtor "personally appeared" before her on September 16, 1998. The "corrected" Mortgage, now containing the second acknowledgment with the original acknowledgment

stricken, was then re-recorded at the Bedford County Recorder's Office.

It is important to also note that on September 28, 1999, the Debtor filed a prior Chapter 7 bankruptcy, receiving his Chapter 7 discharge on December 29, 1999. In that prior case, the Debtor failed to identify on his schedules or in his statement of financial affairs the existence of the above factual scenario. As a result, the Chapter 7 Trustee took no action pursuant to 11 U.S.C. § 544(b)(1)[1] in the prior bankruptcy to avoid the August 6, 1998 "transfer" which is the subject of this adversary proceeding.

## PROCEDURAL HISTORY

On November 9, 2004, the Debtor voluntarily filed the present Chapter 13 bankruptcy. On January 31, 2005, the Bank timely filed its Proof of Claim ("Claim") in the amount of $114,469.82 for unpaid sums arising from the Mortgage. Thereafter, on March 22, 2005, the Chapter 13 Trustee and the Debtor filed a joint Objection to the Bank's Proof of Claim. On consent of the Parties, the Objection was converted to an adversary proceeding pursuant to Fed. R. Bankr.P. 7001(2), since it involved "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" being brought pursuant to the Trustee's 11 U.S.C. § 544 "strong-arm powers." In their Objection, the Trustee and the Debtor claimed that the lien on the Mattie Road Property should be avoided since: (1) at no relevant time did the Debtor own the property identified as "R.R. 1 Box 10A, Clearville, PA 15535" on the Mortgage; (2) the acknowledgment on the recorded Mortgage was "fraudulent" having no "notice effect" on the Trustee

since the Debtor never personally appeared before notary Houser, and, neither Houser nor Rametta resided in the county where the property was located; (3) the Mortgage is avoidable under Section 544(a)(3) since the Chapter 13 Trustee is a bona fide purchaser of real property; (4) the Bank's in personam claim was extinguished upon the Debtor's receipt of his Chapter 7 discharge; (5) the Bank's in rem claim is extinguished because the Mortgage allegedly covers property not owned by the Debtor; and, (6) the Bank's claim is a previously discharged unsecured claim.

On January 30, 2006, the Trustee and Debtor filed their Motion for Summary Judgment seeking to avoid the Bank's "defective" Mortgage against the Mattie Road Property. The Plaintiffs contend that due to the "fraudulent" acknowledgments the Bank's Mortgage on the Mattie Road Property was not valid thereby estopping any attempt by it to "reform" the Mortgage to correct the errors after the bankruptcy was filed. Furthermore, the Motion claimed the Bank has no in personam or unsecured claim against the Debtor since any such claim was discharged in the Debtor's previous Chapter 7 Bankruptcy. Also on January 30, 2006, the Bank's Motion Summary Judgment was filed countering that the acknowledgment was proper and therefore the recorded Mortgage provided notice of the Bank's secured position unaffected by Section 544(a)(3); the notary's county of residency is irrelevant; and, even if the Debtor's personal liability under the note was discharged in his prior Chapter 7 bankruptcy and the Mortgage avoided, the outstanding indebtedness on

---

1. Unless otherwise indicated, all references in this Opinion are to the United States Bankruptcy Code, Title 11, 11 U.S.C. § 101, et seq. as it existed prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), P.L. 109–8, § 256, 119 Stat. 23, 11 U.S.C. § 101 et seq.

the loan remains as an unsecured claim in the present bankruptcy.[2]

Subsequent to the filing of the Motion for Summary Judgment, with the Trustee and Debtor's consent, the Bank filed an Amended Answer to the Amended Complaint (previously filed by the Trustee and the Debtor as an Amended Objection to Proof of Claim.) In it, the Bank raised for the first time the Trustee and Debtor's lack of standing to attack the Bank's claim due to the Debtor's failure to schedule the current avoidance claim in his prior Chapter 7 bankruptcy. It is within this context the Court has decided the pending cross-motions for summary judgment.

## STANDING OF THE CHAPTER 13 TRUSTEE AND DEBTOR

The first issue to be resolved by this Court is whether the Chapter 13 Trustee and the Debtor, either collectively or individually, possess the requisite standing to prosecute the pending avoidance action pursuant to *Section 544* of the Code. *See The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir.2000) (the initial inquiry of whether a party has standing is analogous to the threshold question of Article III subject matter jurisdiction); *see also Geisenberger v. Gonzales*, 346 B.R. 678, 680–81 (E.D.Pa. 2006) (since standing is perhaps the most important of jurisdictional doctrines, federal courts are under an independent obligation to examine their own jurisdiction when this issue arises); *Virgin Islands Government Hospitals and Health Facilities Corp. v. Government of the Virgin Islands*, 2006 WL 2059818, at *3 (V.I. June 30, 2006) (noting a federal court lacks jurisdiction over a dispute if a party lacks standing since standing is a component of subject matter jurisdiction); *Giordano v. Wachovia Securities*, 2006 WL 2177036, at *2 (D.N.J. July 31, 2006).

■ The Bank contends that neither the Trustee nor the Debtor have standing to object to its Claim, and therefore, this Court lacks jurisdiction to hear the matter. In support of its assertion, the Bank reasons that the avoidance action currently being asserted was and remains property of the Chapter 7 estate created by the filing of the Debtor's 1999 Chapter 7 bankruptcy. As a result, the Bank claims only the Chapter 7 Trustee, if anyone, possesses the requisite standing to object to its Claim.

There is no dispute that while the 1999 case was pending the Chapter 7 Trustee took no steps to avoid the Mortgage. Regardless, the Chapter 13 Trustee claims that her power to avoid the transfer created by filing of the Mortgage is unaffected by the Debtor's prior Chapter 7 case since "transferred property subject to recovery in an avoidance action is not property of the estate until it is actually recovered by the bankruptcy trustee." *In re ABC–NACO, Inc. et al. v. Bank of America, N.A.*, 331 B.R. 773 (Bankr.N.D.Ill.2005), *citing In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir.1992). As such, in her capacity as a "bona fide purchaser," the Chapter 13 Trustee believes that she possesses the requisite standing to avoid the August 8, 1998 Mortgage filing which is the subject of the within adversary proceeding.

---

**2.** The Bank also claimed that any defect in the Mortgage has been remedied by the most recent curative statute periodically enacted by the Pennsylvania legislature in recognition of the modern trend in dealing with similar types of acknowledgment errors found in recorded documents. However, *21 P.S. § 281.1*, the statute upon which the Bank relies, was enacted on July 5, 2005, effective September 6, 2005. Because the effective date of this statute occurred after the November 9, 2004 filing date of this bankruptcy, the enactment of this curative statute is not relevant to the matters at issue.

In resolving the standing issue, this Court must first determine whether the Chapter 7 Trustee's mere "claim" to a *Section 544* avoidance action, as opposed to an actual recovery as a result thereof, qualifies as property of the Chapter 7 estate. Since the argument at hand involves the interpretation of *Section 541*[3], it is essential to understand the meaning and applicability of the phrase "property of the estate." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982) (there is no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes); *Kellogg v. United States (In re West Texas Marketing Corp.)*, 54 F.3d 1194, 1200 (5th Cir.1995) *cert. denied* 516 U.S. 991, 116 S.Ct. 523, 133 L.Ed.2d 430 (1995) ("[a]s with any statutory question, we begin with the language of the statute"); *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank N. A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)) ("when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms"); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 238–240, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (specifically providing guidance to courts interpreting the Bankruptcy Code made clear that as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the statute's plain language); *United States v. Cooper*, 396 F.3d 308 (3d Cir.2005) (when interpreting the meaning of a statute a court must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute under review).

■ *Section 541(a)(3)* describes an "estate" as "[a]ny interest in property that the trustee *recovers*" under certain enumerated statutory provisions. *11 U.S.C. § 541(a)(3)* (emphasis added). Here, based upon an examination of the plain language of *Section 541*, it is clear that a mere "claim" held by the Chapter 7 Trustee for potential or prospective recovery pursuant to her strong-arm powers does not qualify as property of the Chapter 7 estate. The plain and unambiguous language of *Section 541(a)(3)* clearly references only those interests "in property that the trustee *recovers* " (emphasis added), not interests "in property that the trustee *can* recover." *See, e.g., Robison v. First Financial Capital Management Corporation*, 55 B.R. 724 (D.Utah 1985). Therefore, for a claim to become "property of the estate" a trustee must actually exercise her avoiding powers and make a tangible recovery of the property before it can

3. § 541. Property of the estate
(a) The commencement of a case under section 301, 301 or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
(A) under the sole, equal, or joint management and control of the debtor; or
(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.
(3) Any interest in property that the trustee recovers under Section 329(b), 363(n), 543, 550, 553, or 723 of this title....
*11 U.S.C. § 541(a).*

be transformed into "property of the estate" as envisioned by *Section 541(a)(3)*. All the trustee possesses before she actually recovers the property for the benefit of the estate is a "statutorily created right to bring an action to recover property." *Sweetwater*, 55 B.R. at 730; *see also In re Saunders*, 101 B.R. 303 (Bankr.N.D.Fla. 1989) (the inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional paragraph of *Section 541(a)(3)* reflects the congressional intent that such property is not to be considered property of the estate until it is actually recovered); 5 *Collier's on Bankruptcy*, ¶ 541.14 n. 1 (Lawrence P. King ed., 2006).

■ Because the Chapter 7 Trustee took no action to avoid the August 6, 1998 transfer, i.e., the Mortgage entered into between the Debtor and the Bank, which is the subject of the current adversary proceeding, according to the clear and unambiguous language of *Section 541(a)(3)*, the claim "to potentially recover an asset" for the estate never became "property" of the Chapter 7 estate. Transferred property subject to recovery in an avoidance action is not property of the estate until it is actually recovered by the bankruptcy

trustee.[4] *See In re ABC–NACO, Inc. et al. v. Bank of America, N.A.*, 331 B.R. 773 (Bankr.N.D.Ill.2005). Nor does such an interpretation render an absurd result.

Although a review of the legislative history provides no guidance, the recognition of a qualitative difference between *Section 541(a)(2)* property of the estate which identifies all "interests" the debtor holds as of the commencement of the case, and *Section 541(a)(3)* which limits property of the estate to actual recoveries by the trustee upon exercise of her avoiding powers, makes sense. In the former, it is imperative for the debtor to make full disclosure of all interests held by him at the commencement of the case, albeit tangible or inchoate, so as to allow the trustee full opportunity to explore the value of any potential recovery in exercise of her fiduciary responsibilities to all creditors under the circumstances of a particular filing. In the event of the latter, the trustee's *Section 544(a)(3)* strong-arm powers are simply that: statutorily created powers intended to augment the estate if successfully advanced by the trustee, not a prepetition asset belonging to the debtor in his own right or something the estate later acquires. *Sweetwater*, 55 B.R. at 731.

**4.** The Bank raises the additional argument that because the avoidance claim was not listed on the Debtor's schedules in the prior Chapter 7 Bankruptcy, it was not "deemed administered" within the meaning of *11 U.S.C. § 554*, and thus was not abandoned back to the Debtor when that case was closed. However, the statute upon which the Bank relies, specifically *11 U.S.C. § 554*, states that *"property of the estate* that is not abandoned . . . and that is not administered in the case remains property of the estate." *11 U.S.C. § 554(d)* (emphasis added). Consistent with the Court's finding that the avoidance claim never became or constituted "property of the estate" in the Chapter 7 bankruptcy, the Bank's reliance on *Section 554* is misplaced since that statute contains an initial threshold requirement that the property at issue first

qualify as "property of the estate." Also, the Debtor's schedules are designed to identify "assets" of the Debtor in existence as of the date of commencement of the case. Since the Trustee's avoidance powers are statutorily created causes of action which come into existence as of the filing of the case and, except under very limited, other circumstances not at issue here, are vested in the Trustee, the Debtor would not be required to list a Trustee's potential "claim" in his Schedules. The only obligation of the Debtor would be to identify the facts forming the basis of a potential avoidance claim, to the extent he was aware of the same, on his Statement of Financial Affairs, so that the Trustee may thereafter deal with the information as she determined appropriate under the circumstances.

Rather than requiring an opportunity be lost due to vagaries of pleadings, the use of different case tactics and strategies, and exercise of discretion and judgment by counsel and trustees from a prior bankruptcy filed under completely different circumstances, *Section 544(a)(3)* recognizes only the recovery itself as property of the estate. To do otherwise would unfairly hamstring a trustee receiving the subsequent case under circumstances which may for the first time allow for a successful exercise of her avoiding powers for the benefit of new creditors. Therefore, the exercise of the Chapter 13 Trustee's avoidance power in this case is unaffected by the Debtor's prior Chapter 7 bankruptcy. The Chapter 13 Trustee possesses the requisite standing to proceed in this matter.[5]

### STANDARD OF REVIEW

In reviewing a motion for summary judgment this Court's starting point is found in *Fed.R.Civ.P. 56*, made applicable to this adversary proceeding by *Fed. R. Bankr.P. 7056.* As such, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions that are part of the record, in addition to affidavits, demonstrate the absence of any genuine issue of material fact thereby entitling the moving party to judgment as a matter of law. *Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Dongelewicz v. First*

*Eastern Bank,* 80 F.Supp.2d 339, 343 (M.D.Pa.1999). Summary judgment is appropriate if no material, factual issue exists and the only issue before the court is a legal one. *EarthData Int'l of N.C., L.L.C. v. STV Inc.,* 159 F.Supp.2d 844 (E.D.Pa. 2001); *In re Air Nail Co., Inc.,* 329 B.R. 512 (Bankr.W.D.Pa.2005). In deciding a motion for summary judgment, the Court must view the facts in a light most favorable to the nonmoving party. *United States v. Isley,* 356 F.Supp.2d 391 (D.N.J. 2004). The moving party, moreover, bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party satisfies its burden by establishing a *prima facie* case for summary judgment, no issue of fact exists for trial unless the non-moving party can identify sufficient evidence favoring it on the alleged factual issue such that a reasonable jury could only return a verdict in its favor. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998). "It is important to note that, even if a genuine factual dispute is shown to exist, such showing may not necessarily suffice to preclude the entry of a summary judgment. Indeed, the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

---

**5.** As a result of the Court's ruling in this regard, there is no need to determine whether the Debtor possesses independent standing since this Court's jurisdiction has been established for purposes of deciding the matter presently before it. The Court's jurisdiction was not otherwise at issue in this matter. The Debtor does possess the requisite stand-

ing, and this Court's jurisdiction pursuant to *11 U.S.C. § 157* and *§ 1334* is clear, since the additional issue involves a "core proceeding" arising under the Bankruptcy Code concerning the status, if any, of the Bank's claim in the event the Mortgage is avoided. *28 U.S.C. §§ 157(b)(2)(A), (B) and (O).*

issue of *material* fact." *In re Allegheny Health, Educ. and Research Foundation*, 321 B.R. 776, 789 (Bankr.W.D.Pa.2005).

### THE CHAPTER 13 TRUSTEE'S STATUS AS A BONA FIDE PURCHASER

 Next, the Court's analysis turns to whether the Chapter 13 Trustee holds the status of a hypothetical "bona fide purchaser" so as to allow her to exercise her powers to avoid the Mortgage.[6] If the Trustee attains such a status, *Section 544(a)(3)* expressly allows her to avoid the Mortgage if it would not otherwise have bound a bona fide purchaser at the time the Debtor commenced his bankruptcy case. *In re Johnston*, 333 B.R. 724, 732 (Bankr.W.D.Pa.2005); *In re Speer*, 328 B.R. 699 (Bankr.W.D.Pa.2005). Thus, if a bona fide purchaser would prevail with respect to a previous transfer, lien or encumbrance, the Trustee will similarly prevail. *Midlantic National Bank v. Bridge*, 18 F.3d 195, 200 (3d Cir.1994).

 The scope of a trustee's "strong-arm powers" pursuant to *Section 544(a)(3)* is reliant upon the state substantive law in which the property affected by the transfer, lien or encumbrance is located. *Midlantic National Bank*, 18 F.3d at 199. In Pennsylvania, for one to attain the status of a bona fide purchaser of real property that person or entity must acquire the

property without actual or constructive notice of a prior interest in the property. *See 21 P.S. §§ 351, 357; 16 P.S. § 9853; First Citizens National Bank v. Sherwood*, 583 Pa. 466, 879 A.2d 178 (2005) (purchaser of real property has constructive notice of a mortgage if properly recorded even if defectively indexed); *see also Butler v. Lomas & Nettleton Company*, 862 F.2d 1015 (3d Cir.1988); *In re Johnston*, 333 B.R. at 732. Either constructive or actual notice of third party rights will defeat the claim of "bona fide purchaser" status by a subsequent purchaser, including the Chapter 13 Trustee. *McCannon v. Marston*, 679 F.2d 13 (3d Cir.1982); *In re Speer*, 328 B.R. 699 (Bankr.W.D.Pa.2005). The objective of the recording requirements, of course, is to give notice of the existence of any transfer, lien, encumbrance, or the like, affecting the property in question. *Schwab v. GMAC Mortgage*, 333 F.3d 135 (3d Cir.2003).

### *Failure to Date Acknowledgment*

 The Debtor claims that the recorded Mortgage is not valid because the second, executed acknowledgment by Houser is fraudulent. There is no dispute that on September 16, 1998, Houser executed the second acknowledgment outside the Debtor's presence and without the benefit of his signature.[7] However, the

---

6. § 544. **Trustee as lien creditor and as successor to certain creditors and purchasers**

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—...

(3) a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and had has perfected such

transfer at the time of the commencement of the case. . . .

*11 U.S.C. § 544(a)(3)*.

7. Standing alone, the Court recognizes that recent cases support the notion that a party's failure to personally appear before a notary public may render the acknowledgment fraudulent vitiating the effect of a subsequently recorded document. *See In re Fisher*, 320 B.R. 52 (E.D.Pa.2005) (notary's failure to be present when mortgage signed rendered acknowledgment invalid subjecting mortgage to avoidance on exercise of trustee's strong-arm powers). However, here there is no dispute

Court need not determine whether the failure of the Debtor to appear before Houser renders the Houser acknowledgment fraudulent thereby invalidating the Mortgage for record notice purposes. Under the present facts, the Houser acknowledgment is not relevant. It has simply become a "red herring."

■ One of the most important purposes of an acknowledgment is to verify that the signed document is the intentional and voluntary act or deed of the signing party. *21 P.S. § 2915; In re Fisher,* 320 B.R. 52, 63–4 (E.D.Pa.2005); *In re Messinger,* 281 B.R. 568, 573 (Bankr.M.D.Pa. 2002) (citations omitted). Although a dated certificate of acknowledgment provides further assurance that a mortgage is valid since executed on or prior to its effective date, there does not appear to be any Pennsylvania statutory authority requiring an acknowledgment date for purposes of recording the document. Similarly, Pennsylvania case law on the issue is relatively scant. Consistent with the position taken by other courts, Pennsylvania courts agree that simply omitting a date from the certificate of acknowledgment will not render a mortgage invalid if ascertainment of the date clearly appears by evidence found within the recorded instrument itself. *In re Dahlem's Estate,* 175 Pa. 454, 34 A. 807, 808 (1896); *see also In re Medlin,* 201 B.R. 188 (Bankr.E.D.Tenn.1996) (stating a certificate of acknowledgment may be read in conjunction with the deed and other documents to explain any defect attributable to the oversight of the parties); *Spero v.*

*Bove,* 116 Vt. 76, 70 A.2d 562 (1950); *Levitt v. 1317 Wilkins Corp.,* 58 N.Y.S.2d 507 (N.Y.1945); *Hasley v. Bunte,* 176 Okla. 457, 56 P.2d 119 (1936); *Sanford v. Empire Land Co.,* 212 Ala. 568, 103 So. 655 (1925); *see also* 1A C.J.S. Acknowledgments § 52 (2005) ("the date of the certificate of acknowledgment is not an essential part thereof, and its omission, or a mistake therein, generally will not invalidate the certificate").

In *Dahlem's Estate, supra,* the Pennsylvania Supreme Court addressed this very issue, albeit over 100 years ago [8], finding that the lack of a date in a certificate of acknowledgment is not fatal to the validity or effect of the recorded mortgage.

"The court is entitled to look to the whole instrument, and, as it is thus seen to contain within its four corners conclusive evidence of the date of acknowledgment, the informality of the certificate in that respect must be considered as obviated. Any other result would be sacrificing to mere form the substantial compliance with the requirements of the statutes which our cases held to be sufficient."

*In re Dahlem's Estate,* 34 A. at 808. In establishing the acknowledgment date for the mortgage, the *Dahlem's Estate* court relied on another, dated acknowledgment which was stricken due to use of the wrong form but contained in the mortgage under review. Although the second acknowledgment used for recording purposes was otherwise in good form, the day of the month was omitted. Nevertheless, "when the

---

that the Debtor personally appeared and signed the acknowledgment in Rametta's presence. No "fraud" is alleged by the Plaintiffs as to the Rametta acknowledgment.

**8.** The statutory framework in which the *Dahlem's Estate* court operated in 1896 has now become less restrictive in Pennsylvania in determining whether an acknowledgment

passes statutory muster. At the time of *Dahlem's Estate* apparently there was a statutory requirement that an acknowledgment be dated. Our review of applicable Pennsylvania statutory law, including the Pennsylvania Uniform Acknowledgment Act, *21 P.S. § 291.1 et seq.,* indicates no such present statutory requirement.

date clearly appeared from the whole instrument" that was sufficient for the *Dahlem's Estate* court to find that the absence of a dated acknowledgment in and of itself was not fatal to the effectiveness of the recorded mortgage. *Id.* at 808. For similar reasons, Rametta's failure to date the certificate of acknowledgment in question here will not invalidate the Mortgage or the intended "notice effect" of its recordation.

Here, the originally recorded Mortgage was dated "August 6, 1998." Rametta signed the Mortgage as "witness" to the Debtor's signature on "August 6, 1998." The certificate of residency signed by a "Deb Skaff" was dated "August 6, 1998." The first recording of the Mortgage occurred on "August 13, 1998" at "1:12 P.M." in the Bedford County Recorder's Office. The seven page Mortgage was assigned "Document No. 005883" and recorded at "Book Number 725, Page Nos. 097 through 103." Immediately prior to the initial recording of the Mortgage, the two-page Deed, which the Mortgage accompanied, was also filed in the Bedford County Recorder's Office on "August 13, 1998" but one minute earlier at "1:11 P.M." The Deed was assigned "Document No. 005882" and recorded at "Book Number 725, Page Nos. 095 to 096." The Deed was also dated "August 6, 1998" and signed by the Debtor and his ex-wife. The acknowledgment to the Deed, also dated "August 6, 1998," was executed by Rametta in his capacity as notary public. The certificate of residency was also signed by Rametta, and although no date was required by the form, ostensibly it too was signed on "August 6, 1998."

Based upon a review of the above chain of interconnected, "record" events, this Court can arrive at only one inescapable conclusion. In ascertaining the acknowledgment date not only do we have the benefit of the recorded Mortgage but we also have the benefit of the accompanying Deed. As with all of his other signature entries on the Mortgage and the related Deed, clearly Rametta signed the acknowledgment in question on August 6, 1998. No other conclusion can be drawn from these undisputed facts. Neither the Trustee nor the Debtor have adduced any contrary evidence which would create a genuine dispute of material fact in this regard.

Under the circumstances, Rametta's failure to date the acknowledgment, at best, constitutes a *de minimus*, technical error, which does not detract in any way from the notice effect of the Mortgage as originally filed. To totally invalidate and disregard an otherwise proper, recorded mortgage based on omission of a date from an acknowledgment, where the date is readily apparent from review of the mortgage itself and other related, recorded documents, would take the concept of "form over substance" to a new and unwarranted level. This is exactly the type of harm the *Dahlem's Estate* court cautioned against. Consequently, the argument that the Mortgage is invalid and must be disregarded due to Rametta's "defective" acknowledgment lacks merit. Thus, there is no need to even consider the effect of the Houser acknowledgment on the re-recorded Mortgage. The first recording of the Mortgage did not render it "defective" or "fraudulent" for record notice purposes. All subsequent purchasers possessed notice of the Mortgage as originally filed. As such, the Chapter 13 Trustee possessed record notice of the Mortgage and cannot now claim bona fide purchaser status because of the undated acknowledgment. *See First Citizens National Bank*, 583 Pa. 466, 879 A.2d 178 (2005).

*Non–Resident Notary Public Mortgage Acknowledgment*

The Debtor and the Chapter 13 Trustee also claim the Mortgage should be

avoided since it was notarized by a Centre County notary public rather than a Bedford County notary, the county in which the Mattie Road Property is located. In *In re Jones*, 308 B.R. 223 (E.D.Pa.2003), the District Court confronted a similar argument by the debtor who contended that the subject mortgage was defectively acknowledged because a Philadelphia County notary public acknowledged a mortgage for property located in Delaware County. *In re Jones*, 308 B.R. at 229. In rejecting this argument, the *Jones* Court relied upon the language of former *57 Pa.C.S. § 164* which stated, in pertinent part, that "[n]otaries shall have the power ... to take and receive the acknowledgment ... of all ... mortgages ... touching or concerning any lands ... lying and being in any part of this State." *57 P.S. § 164*. In reliance on this statutory language, the *Jones* court found that Pennsylvania notaries possessed the authority to execute valid mortgage acknowledgments affecting property located anywhere within the Commonwealth regardless of the notary's county of residence.[9] *Jones*, 308 B.R. at 230–1. *See also In re Fisher*, 320 B.R. at 70 (in dicta that use of a non-resident notary was at most a mere latent defect without any effect on the mortgage's eligibility for recording thereby creating sufficient notice to defeat use of the trustee's strong-arm powers).

Since the *Jones* decision, *57 P.S. § 164* was repealed, effective July 1, 2003. The repeal of *57 P.S. § 164*, however, was apparently replaced with the concurrent amendment of *57 P.S. § 148* of the Pennsylvania Notary Public Law which the Bank asserts, and this Court agrees, continues to provide a properly appointed notary public statewide jurisdiction in performing his duties and exercising his authority. Amended *57 P.S. § 148* reads, in relevant part,

> "[T]he Secretary of the Commonwealth is hereby authorized to appoint and commission ... as many notaries public as ... the interest of the public may require, *whose jurisdiction shall be coextensive with the boundaries of the Commonwealth*" (emphasis added).

While there appear to be no cases interpreting amended *57 P.S. § 148*, because of the plain language contained in the statute and for the same reasons expressed by the *Jones* court in interpreting the effect, scope and breadth of the previously repealed but similar statute found at *57 P.S. § 164*, it is clear to this Court that Pennsylvania notaries continue to possess jurisdiction and authority to perform their duties on a statewide level. In the light of the above, the Mortgage cannot be set aside, or its "notice effect" disregarded, simply because it was acknowledged by a Pennsylvania notary with a residence different from the county in which the Mattie Road Property is located.

*Inaccurate Street Address*

█ Next, the Chapter 13 Trustee and Debtor claim that the Trustee holds the status of a bona fide purchaser without notice since neither the initially recorded Mortgage nor the rerecorded Mortgage recited the correct post office street address for the Mattie Road Property. The address listed on the face of the Mortgage purports to encumber a vacant lot in Clearville, PA as opposed to the Mattie

---

9. The Chapter 13 Trustee and Debtor refer the Court to *21 Pa. C.S. § 444* for the proposition that a mortgage must be acknowledged by a notary of the county in which the conveyed lands are located. However, *Jones*, relying on *Davey v. Ruffell*, 3 Pa. D. 75 (1893)

and *Engstrom v. Siegel*, 36 Pa.D. & C.2d 184 (1965), rejected that argument based upon an application of *21 Pa.C.S. § 444* finding that *57 Pa.C.S. § 164* was not inconsistent with *21 Pa.C.S. § 444*.

Road Property. The Bank counters that any such error is inconsequential.

Despite the discrepancy in the post office addresses listed on the Mortgage, the encumbered property described in the body of the Mortgage is not simply identified by a street address. Rather, reference is made to a subdivided lot and an apparent metes and bounds description contained in a prior deed, which description is incorporated by reference. The property description contained in the Deed accompanying the Mortgage is a metes and bounds description. Unfortunately, the record upon which the Court must decide this issue does not contain any copy of the property description incorporated by reference into the Mortgage so as to allow the Court to review its content.

 The law in Pennsylvania is quite clear. A properly recorded document (such as the Mortgage at issue here) gives subsequent purchasers constructive notice of the recorded document. A purchaser of real property is on constructive notice of the existence of a properly recorded mortgage even if the document is improperly indexed. *See First Citizens National Bank,* 879 A.2d at 182–83; *see also In re Haburjak,* 309 B.R. 170 (Bankr. W.D.Pa.2004) (under Pennsylvania law, specifically *21 P.S. § 357,* a properly recorded mortgage encumbering the subject realty is sufficient to provide constructive

notice to the world of the mortgagee's lien interest precluding the exercise of the Trustee's strong-arm powers pursuant to *§ 544(a)).* However, that "notice" is only as good as the description of the property identified in the recorded document.

 In identifying real estate subject to a properly recorded mortgage, a legal description, be it by metes and bounds, adjoinders, courses and distances, survey plots or measurements, is much more specific than a mere post office street address. As a result, courts confronted with a discrepancy in a legal description embodied in the same document routinely employ a hierarchy of accepted methods for determining the controlling description. The more precise description is favored over the less specific. Therefore, for purposes of identifying a particular piece of real estate, an accurate metes and bounds description "trumps" a street address also recited in a mortgage. The meets and bounds description controls.[10]

Although there are indications in the record that the legal description contained in the originally recorded and re-recorded Mortgage actually described the Mattie Road Property, based upon what is currently before it, the Court cannot make that determination as a matter of law. Likewise, despite the inclusion of an incorrect post office address, there may not be

---

10. *See In re Dupell,* 235 B.R. 783, 787 n. 3 (Bankr.E.D.Pa.1999) (even if a mortgage recites an incorrect street address, a Bank's mortgage is not defective where it contains a correct metes and bounds or legal description); *Post v. Wilkes–Barre Connecting R.R.* 286 Pa. 273, 133 A. 377 (1926) (general rule is that monuments on the ground are of the highest value in describing a property); *Pennsylvania Game Commission v. Keown,* 80 Pa. Cmwlth. 471, 471 A.2d 937 (1984) (where land described by courses and distances and also by calls to adjoinders, the latter governs in the event of a discrepancy); *Merlino v.*

*Eannotti,* 177 Pa.Super. 307, 110 A.2d 783 (1955) (fixed boundaries govern over measurements found in deed). *See also Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.,* 219 A.D.2d 186, 641 N.Y.S.2d 680, 682 (N.Y.App.Div.1996) ("[w]hen there is a discrepancy between the street address and the legal description of a piece of real property, the legal description controls"); *National Convenience Stores, Inc. v. Martinez,* 784 S.W.2d 468, 471 (Tex.App.1989); *Lander Lumber Co. v. Williams,* 250 S.W.2d 317, 319 (Tex.App.1952).

a dispute among the Parties that the Mortgage was properly indexed against the Mattie Road Property.[11] Unfortunately, based on the current record, the Court is unable to determine if the legal description found in the body of the Mortgage tracks the metes and bounds description set forth in the accompanying Deed. Because the Mortgage contains a legal description referencing a subdivision plot and simply incorporates by reference a legal description in a prior deed which has not been made part of the record, the Court is unable to decide the critical question of the effect of the legal description contained in the Mortgage on the Trustee's bona fide purchaser status.

The Bank has failed in supporting its Motion for Summary Judgment in this regard.[12] Similarly, the Trustee and the Debtor have failed to provide sufficient direction to the Court allowing it to resolve this issue. Other than arguing in a vacuum about the conflicting addresses without reference to the effect of the various property descriptions contained within the Mortgage and related deeds, Plaintiffs make no reference to any other record evidence in support of their contention. Without more, this Court cannot determine what record notice, if any, the reasonable title searcher may have encountered, and how that information would be processed upon review of the records available to her at the Bedford County Recorder's Office. Neither Party has sustained their burden on this critical, material issue going to the heart of the cross-motions for summary judgment. As such, under the current record facts, the Court cannot fully determine the record notice effect of the property descriptions contained in the relevant, recorded documents on the Trustee's putative status as a bona fide purchaser. Since a genuine dispute of material fact exists in this regard, the Parties' cross-motions for summary judgment are denied.

### Extinguishment of In Personam and In Rem Claims

Finally, the Debtor and Trustee jointly object to both the Bank's *in personam* and *in rem* claims arising out of the Bank's Mortgage. First, they argue that the Bank's *in personam* claim for liability on the note accompanying the Mortgage was extinguished upon the discharge of the Debtor in his prior Chapter 7 bankruptcy. Because the Debtor's personal liability on the loan was discharged in the prior Chapter 7 bankruptcy, apparently even the Bank concedes it has no *in personam* claim against the Debtor in the pending Chapter 13 so long as the Mortgage is not avoided.

Next, the Debtor and Trustee maintain that because the Debtor was discharged of his personal liability on the loan, the only surviving claim benefitting the Bank is its *in rem* claim against the collateral on its loan, i.e., the Mattie Road Property. The Plaintiffs then take the matter to the next

---

11. It is clear from the record before the Court that the Mattie Road Property was never indexed against "America's Wholesale Lender." Nor was such entity ever identified as a Party to the Mortgage.

12. A review of the partial transcript of the Debtor's deposition taken on September 22, 2005 is of little help. Although questions are posed to the Debtor concerning the legal description contained in the exhibits identified as "Wagner One" (which appears to be the 1997 deed) and "Wagner Four" (which appears to reference the Mortgage), no copies of the deposition exhibits are made part of the current record. *See Motion of Defendant, Christiana Bank & Trust Company for Summary Judgment Pursuant to F.R.B.P. 7056* at Document No. 3, Exhibit "A" at pp. 59–60. The Court is unable to "connect the dots" and arrive at any logical result on the record presented.

level by further asserting that if the Mortgage is successfully avoided, the Bank no longer possesses a valid, secured lien on the Mattie Road Property. In such event, they contend the Bank is left without any claim whatsoever in the current bankruptcy. In support, the Trustee and Debtor rely on *In re Peebles*, 197 B.R. 799 (Bankr. W.D.Pa.1996) which simply held that where a lien of a mortgage is not properly recorded and the Bank's *in personam* claim is discharged in a pending Chapter 7 proceeding, the lender is precluded from prosecuting a state court reformation action. *But see In re Gounder*, 266 B.R. 879, 881 (Bankr.E.D.Cal.2001) ("[e]ffectively, the discharged debt is nonrecourse debt. Because of the chapter 7 discharge, the claimant cannot sue the debtor but it can foreclose on its security. The intervention of the chapter 13 petition and the application of section 506(a), however, prevent it from pursuing its collateral. Consequently, the claimant has an unsecured claim against the estate. It is entitled to be paid whatever [is paid generally to unsecured creditors], the prior chapter 7 discharge notwithstanding"). *See also In re Haque*, 331 B.R. 524 (Bankr.D.Mass.2005).

The ultimate resolution of this issue is dependent on whether the Bank continues to possess a valid mortgage against the Mattie Road Property not subject to avoidance. Obviously, if the Bank prevails, the Plaintiffs' reliance on *Peebles* is of no help since the absence of a security interest attaching to the subject property was critical to its holding. However, the need for making that determination may be rendered moot upon resolution of the central issue in this case. Therefore, the Court will reserve its decision on this issue pending determination of the bona fide purchaser status of the Trustee. Accordingly, there is no need at this time to decide the effect, if any, on the Bank's claim in the event the Mortgage was avoided.

## CONCLUSION

Although the Chapter 13 Trustee possesses standing to prosecute the avoidance claim set forth in the joint Objection/Complaint, proof of her ability to avoid the mortgage under applicable Pennsylvania law pursuant to *11 U.S.C. § 544(a)(3)* is unclear based on the current record. The failure of Paul Rametta to date the first acknowledgment to the Mortgage did not affect the record notice of the document filing, itself, as to all subsequent purchasers. Likewise, that the Mortgage was notarized by a non-resident notary public is not cause to deem the acknowledgment a nullity thereby vitiating its record notice effect on the Chapter 13 Trustee. Since properly acknowledged by Rametta, the Mortgage was properly recorded in the first instance despite the action of the Bedford County Recorder's Office in requesting its re-recording. Therefore, the undisputed material facts support a finding that the Chapter 13 Trustee possessed "record notice" of the filing of the Mortgage. However, the effect of the property description contained in that document vis-a-vis the Trustee's status as a bona fide purchaser has not been completely established by either Party. A title search of the Debtor's property would disclose to the reasonable title searcher the existence of the properly recorded Mortgage but questions persist as to whether it actually encumbered the Mattie Road Property in light of the conflicting property descriptions and inaccurate property street address contained on the relevant documents. Upon this record the Court is unable to determine if the Chapter 13 Trustee can rightfully exercise her strongarm powers as a bona fide purchaser under *11 U.S.C. § 544(a)(3)*. Therefore, for the reasons stated, the *Motion for Summary Judgment* filed by the Chapter 13 Trustee and the Debtor, Larry E. Wagner and the cross *Motion of Defendant, Christiana Bank & Trust Company, for Sum-*

*mary Judgment Pursuant to F.R.B.P. 7056,* are denied.

An appropriate order will be entered.[13]

### ORDER OF COURT

**AND NOW,** this *5th* day of *September, 2006,* for the reasons expressed in the Memorandum Opinion of even date, it is hereby **ORDERED, ADJUDGED and DECREED** that the *Motion of Defendant Christiana Bank & Trust Company for Summary Judgment Pursuant to F.R.B.P. 7056* and the *Motion for Summary Judgment* filed by the Debtor, Larry E. Wagner, as joined by the Chapter 13 Trustee, are *DENIED.*

It is *FURTHER ORDERED* that a status conference on the issues remaining for purpose of trial is scheduled for *October 4, 2006 at 2:30 P.M.* in Courtroom D, 54th floor, U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA.

**13.** This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law.